244 Ind. 137 (1963)
191 N.E.2d 492
CASSIDY
v.
INDIANA STATE BOARD OF REGISTRATION AND EXAMINATION IN OPTOMETRY ET AL.
No. 30,174.
Supreme Court of Indiana.
Filed June 26, 1963.
*138 John N. Stanton, of East Chicago, for appellant.
Edwin K. Steers, Attorney General, Thomas L. Webber, Deputy Attorney General and F. Laurence Anderson, Jr., of Gary, for appellees.
ACHOR, J.
This is a proceedings for a judicial review of an administrative adjudication wherein the appellant, a licensed optometrist, filed his complaint in the Lake Circuit Court for a review of an order of the Indiana State Board of Registration and Examination in Optometry, by which order the board suspended appellant's license to practice optometry for a period of six months.
As cause for judicial review appellant, among other things, alleged:

*139 "Said petition further alleged as grounds for a review of such order and determination that the proceedings conducted by said Board were in violation of Article 1, Section 23, of the Constitution of the State of Indiana and of Amendments 5 and 14 of the Constitution of the United States; that the Board's findings of facts were insufficient to support its order or to sustain the charges contained in the said amended petition for revocation; that the findings so made were unsupported by substantial evidence; ..."
The cause was submitted to trial court on appellant's petition for review, which was based upon the transcript of the proceedings before the Board. The court entered special findings of facts and conclusions of law thereon, and entered its judgment, which sustained the decision of the Board.
The facts alleged in the complaint of the Optometry Board against the appellant are substantially restated in the special "Finding of Facts" stated by the trial court, as follows, in part:
Number I.
"Hugh E. Cassidy, Plaintiff, has heretofore been issued a certificate for a license to practice optometry in the State of Indiana, duly issued by Defendant Board; that pursuant to said certificate, said Hugh E. Cassidy thereby procured a license to practice optometry in Porter County, Indiana, said license being issued by the Clerk of the Circuit Court of Porter County, Indiana.
Number II.
"That thereafter on August 25, 1960 Plaintiff surrendered his said Porter County License to the Clerk of the Circuit Court of Lake County, Indiana, at which time a license to practice optometry in Lake County, Indiana, was issued by the Clerk of the Circuit Court of Lake County, Indiana. That at all times herein mentioned and referred to plaintiff was a resident of Porter County, Indiana.

*140 Number III.
"That at all times herein mentioned one R.W. Turbow was a resident of St. Joseph County, Indiana and duly licensed to practice optometry only in St. Joseph County where he maintained an office in the City of South Bend.
Number IV.
"That from August 25, 1960 to January 1, 1961 Plaintiff maintained an office and practiced optometry in Porter County, Indiana although he had surrendered his license to practice in such county, and at the same time and during the same period and up to the time of the hearing before the Board on February 15, 1961 in this cause, practices optometry in the City of Gary, Lake County, in a room occupied and used by Lee Optical Company, Inc., said optical office being separated from the rest of said room occupied by Lee Optical Company, Inc., by a partition having the same outside door entrance and each using a common receptionist, which optometry office was maintained by Plaintiff and said R.W. Turbow under a guaranteed contract to plaintiff, hereinafter referred to, and so maintained for the common benefit of Plaintiff said R.W. Turbow and said Lee Optical Company, Inc.
Number V.
"That said contract between Plaintiff and said R.W. Turbow is dated August 3, 1960, is signed by R.W. Turbow and Plaintiff ... which contract, among other things, guaranteed Plaintiff an income of Twelve thousand ($12,000.00) dollars per year for a period of five years and under which contract plaintiff agreed to become affiliated with said R.W. Turbow in his Gary practice of optometry; to devote his entire time and attention exclusively to said practice; that said office be open not later than August 1, 1960; Plaintiff ... was restricted by his contract so that he could not dispense eyeglasses in such territory; under the contract Plaintiff was not to remove any of his personal records of examination from the premises, as they were to constitute also Dr. Turbow's records; Plaintiff was to pay *141 five per cent (5%) of his annual gross income as a rental charge for the office.
Number VI.
"Said Gary office in which Plaintiff performed such professional services as an optometrist used a common outside door, reception room and receptionist with Lee Optical Company, Inc., said company referring all of its examinations to him and said company actually filling all his prescriptions for ophthalmic eyeglasses....
.....
Number VIII.
"That said Lee Optical Company, Inc. carried cut-rate price advertising for ophthalmic eyeglasses in Gary newspapers and by the dissemination of such advertising through distribution of handbills in the City of Gary.
Number IX.
"That plaintiff was warned, prior to beginning such services in said Gary, Indiana, that if he entered into such association in his professional practice that Defendant Board would revoke his license and Plaintiff requested a letter to this effect which was mailed to him by Secretary of Defendant Board.
Number X.
"That by the use of signs and a newspaper advertisement in the November 31, 1960 issue of the Chesterton Tribune and the October 31, 1960 issue of the Portage News, Plaintiff held himself out as qualified for the practice of optometry in Porter County, Indiana, at which times he was not the holder of a valid license to practice optometry in said county." [Our italics.]
The court stated its Conclusions of Law based upon the aforestated finding of facts, as follows:
Number I.
"That plaintiff, Hugh E. Cassidy, as charged in the verified charges filed with the Board, and as found by said Board, practiced optometry in Porter *142 County, Indiana from August 25, 1960 to January 1, 1961 without a license to do so.
Number II.
"That from August 25, 1960 until date of hearing of said Board on February 15, 1961 Plaintiff Hugh E. Cassidy, practiced optometry in Lake County, Indiana under a license issued to him by the Clerk of the Circuit Court of Lake County, Indiana, which was at such time illegal and void due to plaintiff's being, at all such time a resident of Porter County, Indiana, and that Plaintiff unlawfully practiced optometry in Lake County, Indiana, during such time since he was not a resident of such County.
Number III.
"That Plaintiff illegally and contrary to the statutes governing the practice of optometry practiced optometry in both Porter County, Indiana and in Lake County, Indiana from August 25, 1960 to January 1, 1961 and without having a valid license to do so in either county during such period of time.
Number IV.
"That plaintiff illegally advertised his practice of optometry in the City of Chesterton, Porter County, Indiana, by signs and newspaper advertisements, at which time he was not the holder of a valid license to practice optometry in said county.
Number V.
"That plaintiff is guilty of unprofessional conduct, as charged and found by said Board, in that he knowingly conducted himself in the practice of optometry in Lake County, Indiana from August 15, 1960 to February 15, 1961 by accepting employment from Dr. R.W. Turbow, an optometrist licensed to practice only in St. Joseph County, Indiana, and from Lee Optical Company, Inc., in connection with its operation of an optometric business on the same premises which Plaintiff's office was located at 625 Washington Street in the City of Gary, Lake County, Indiana, *143 at which time such Lee Optical Company, Inc. had no license to practice optometry in said County.
Number VI.
"That by associating himself with R.W. Turbow and Lee Optical Company, Inc. Plaintiff thereby intended and did receive financial benefits from his practice of optometry in Gary, Lake County, Indiana as a result of cut-rate advertising by Lee Optical Company, Inc. which advertising he was prohibited by statute from doing directly, and such acts constituted unprofessional conduct and in violation of said statute." [Our italics.]
Two constitutional questions are raised with respect to these proceedings: (1) Is the provision of Acts 1935, ch. 38 § 6, p. 104, being § 63-1010, Burns' 1961 Repl., constitutional, which provides that upon the issuance of a certificate by the clerk of the circuit court granting the right to practice optometry in a county where the optometrist "proposes to reside," upon transfer from another county, "shall entitle the holder of said new license to practice optometry ... only in the county in which the new license was so issued. ..."? [Our italics.] (2) Since the proceedings for revocation of appellant's license was an action judicial in nature [1 Am.Jur.2d, Administrative Law § 181, p. 983] in the trial of that issue, was appellant entitled to be heard by a board consisting of persons whose previous declarations against him were not used as evidence in the proceedings against him?[1]
A decision upon the first issue of constitutionality is necessary because the Conclusions of Law numbered *144 I, II, III and IV in this case are based upon the violation, or assumed violation, of the above cited statute [§ 63-1010]. This section of the statute purports to limit the practice of an optometrist exclusively to the county of his residence.[2]
Such a statutory restriction upon the professional practice of an optometrist, in order to avoid the test of unconstitutionality, must be grounded upon some reasonable exercise of the police power of the state, and must find justification in the public health, welfare, or safety. Frankly, we know of no such justification, and none has been made to appear. This limitation is foreign to the licensing provisions of all other businesses and professions as far as we have been able to ascertain, and no good reason has been stated in support of the above limitation.[3]
Section 63-1010, supra, which contains this restriction and also purports to restrict the practice of an optometrist to a single county is unconstitutional. Therefore, the court's conclusions of law numbered I, II, III and IV, which are based thereon, provide no support in sustaining the decision of the board and the trial court.
In its Conclusions of Law Number V, the court stated:
"That plaintiff is guilty of unprofessional conduct, ... by accepting employment ... from *145 Lee Optical Company, Inc.... at which time such Lee Optical Company, Inc. had no license to practice optometry in said County."
This conclusion is not supported by any finding of facts. It is asserted that the conclusion is supported by the circumstances recited in Finding of Facts Number VI, which is as follows:
"Said Gary office in which Plaintiff performed such professional services as an optometrist used a common outside door, reception room and receptionist with Lee Optical Company, Inc., said company referring all of its examinations to him and said company actually filling all his prescriptions for ophthalmic eyeglasses...." [Our italics.]
However, there is no evidence to support the italicized portions of the finding. In fact, the evidence upon this point is distinctly to the contrary. Furthermore, all of the evidence is to the effect that appellant was employed by R.W. Turbow, optometrist of St. Joseph County, Indiana.
Finally, we consider the court's Conclusion Number VI. In substance, it stated appellant was guilty of "unprofessional conduct" because he received financial benefits from his association with the Lee Optical Company, Inc., which engaged in "cut-rate" advertising, "which advertising he was prohibited by statute from doing directly." Numerous factors must be considered in arriving at a decision as to the propriety of this conclusion of law. First, we consider the pertinent statutory provisions. Parts of the statute relied upon by appellees provide:
"Said board shall have authority and it shall be its duty as far as the provisions of this act permit:
.....
"To determine what acts on the part of any person licensed under this act, shall constitute unprofessional *146 conduct as defined by this law." [Our italics.] § 63-1001, (e).
Section 63-1018a, which defines "unprofessional conduct," provides, in part:
"Without limiting the right of said board to determine what acts on the part of a holder of a license to practice optometry constitute unprofessional conduct, as in section one [§ 63-1001] of this act provided, the following acts, in addition to any other acts that said board may find to be unprofessional conduct, shall be deemed by said board as unprofessional conduct:
.....
"For any person to publish, directly or indirectly, or to circulate any fraudulent, false or misleading statements as to the skill or method of practice of any person or of any optometrist, or to advertise in any manner that will tend to deceive, mislead or defraud the public; or to claim professional superiority, or to advertise directly or indirectly, free optometrical services or examinations, as an inducement to the public to procure optometrical services; or to advertise directly or indirectly any amount as a fee for the professional services or to advertise any definite amount and/or terms for prosthetic devices, material or materials constituting all or part thereof which may be furnished and supplied to the public.

.....
"The direct or indirect acceptance of employment to practice optometry from any person other than one who possesses a valid unrevoked certificate of registration as an optometrist in and for the state of Indiana and who has an actual legal residence within the state." [Our italics.] § 63-1018a, (e) and (g).
We consider the decisions of this court which have construed this statute. In the case of Bennett v. *147 Indiana St. Bd. of Reg. and Ex. in Optom. (1937), 211 Ind. 678, 688, 7 N.E.2d 977, this court upheld a decision of the board which revoked the license of Bennett for "unprofessional conduct." In that case, Bennett had accepted employment to practice optometry from persons who possessed no license to practice optometry and who were not legal residents of the state. This was in violation of § 63-1018 (g), supra. The court, in sustaining the board, held that this provision of the statute was valid exercise of the police power, stating that:
"The practice of optometry bears a close relationship to the health and welfare of mankind.... This fact brings the practice of optometry within the scope of legislative supervision through the exercise of the police power. The principal purpose of the statute is to give protection to the public from quacks, and persons or firms not licensed, but who, as non-resident manufacturers of eyeglasses, etc., employ licensed optometrists to conduct the manufacturer's business in this state for profit. Section 11(g) prohibits such employment...."
In that case this court also stated that the purport of § 63-1018a (e), supra, which forbids advertising of the cost of glasses by an optometrist, "is to prevent certain advertisements and publications likely to mislead and deceive the public," and was, therefore, a proper exercise of "the police power of the state, for the protection of health and general welfare."
It is not contended that appellant committed any of these prohibited acts which are defined in the statutes as "unprofessional conduct." Neither is it contended that Lee Optical Company, Inc. was not entitled to sell eyeglasses as merchandise,[4] *148 or that it engaged in any advertising which was "likely to mislead or deceive the public." Therefore, appellant's association with the company was not "unprofessional conduct" for either of these reasons. Rather, appellant's alleged "unprofessional conduct" consisted solely in the fact that he entered into an arrangement whereby he occupied adjoining and connected office space with that of the Lee Optical Company, Inc., which advertised its merchandise, and that he received financial benefit from this arrangement: the Lee Optical Company, Inc. generally referring its prospective purchasers to appellant for examination, and appellant generally referring his clients to the Lee Optical Company, Inc. for the purchase of eyeglasses, according to his prescription. The board and the trial court concluded that because appellant indirectly received financial benefits from the advertising of the Lee Optical Company, Inc., which advertising he could not do directly, he was guilty of "unprofessional conduct."
But can it be said that a lawyer, whose office space adjoins the offices of a bank or loan association which advertises its business, with most of his business *149 being related to that establishment, is thereby guilty of "unprofessional conduct"? Or may it be said that a doctor, whose office space adjoins that of an apothecary which advertises its business, has thereby engaged in "unprofessional conduct," although these relationships may operate to their mutual financial benefit?
We note that the board found that "such relationship is detrimental to the general public welfare and its fellow optometrists," but this finding is based upon intangibles not defined by, or clearly within the scope of, the statute. In order that this conclusion by the board could be said to support the further conclusion that appellant was guilty of "unprofessional conduct," it would seem that the board has been required to resort to § 63-1018a, which, in remarkable lanaguage, states that, in addition to the enumerated acts defined as "unprofessional conduct," "any other acts that said board may find to be unprofessional conduct, shall be deemed by said board as unprofessional conduct." This complete abrogation of legislative authority, if relied upon by the board, would be unconstitutional. Ennis v. State Highway Commission (1952), 231 Ind. 311, 108 N.E.2d 687; State ex rel. Standard Oil Co. v. Review Bd. (1951), 230 Ind. 1, 101 N.E.2d 60.
Laws which are punitive in nature, and which would deprive an individual of the freedom to exercise the skills of his business or profession, should be construed against the denial of this freedom. Before the police power of the state is used to prohibit the conduct of an individual as "unprofessional," it should be explicitly so defined as such conduct, or it should fall clearly within the scope of the act. If either the "public welfare" or "fellow optometrists" *150 require greater protection than the law provides, the statute should be amended by the legislature so as to state clearly the public policy upon the issue.
Because the court's Conclusions of Law Numbered I, II, III and IV are based on an unconstitutional provision in the law, and because finding of facts stated by the trial court upon issues material to the case are not supported by the evidence, and, further, because the other conclusions of law, as stated by the court, upon which the decision is made to rest, are in error as the law is applied to the facts well stated by the court, judgment must be reversed as being contrary to law. Superior Trailer Mfg. Corp. v. J.W. Scatterday (1961), 243 Ind. 473, 185 N.E.2d 417.
Judgment is, therefore, reversed, with instructions that the trial court restate its finding of facts and conclusions of law and enter judgment in accordance herewith.
Myers, C.J., and Landis, J., concur; Arterburn and Jackson, JJ., not participating.
NOTE.  Reported in 191 N.E.2d 492.
NOTES
[1] In the case at bar, one of the members of the board who sat in judgment had previously written the appellant that his proposed acts were illegal.
[2] The case of Bennett v. Ind. St. Bd. of Reg. and Ex. in Optom. (1937), 211 Ind. 678, 7 N.E.2d 977, cited in Opinions of Attorney General 1955, No. 19, p. 57, did not consider this issue.
[3] See: Architects, § 63-101; Barbers, § 63-301; Beauty Culturists, § 63-1801; C.P.A.'s, § 63-401; Dentists, § 63-502; Dental Hygienists, § 63-527; Embalmers and Funeral Directors, § 63-717; Nurses, § 63-901; Pharmacists, § 63-1101; Physicians and Surgeons, § 63-1301; Osteopaths, § 63-1316; Chiropractors, § 63-1326; Physical Therapists, § 63-1338; Podiatrists, § 63-1401, Burns' 1961 Repl., and Lawyers, Supreme Court Rule 3-13.
[4] This court, in the case of State ex rel. v. Beck Jewelry Enterprises (1942), 220 Ind. 276, 285-286, 41 N.E.2d 622, 141 A.L.R. 876, held that the sale of eyeglasses as articles of merchandise does not constitute the practice of optometry and the advertising thereof by persons other than optometrists is not a violation of the Optometry Act. In its consideration of the case, this court stated:

"Truthful price advertising is a legitimate incident to a lawful merchandising business. Deprivation of the right so to advertise has been held to violate the due process clause of the Fourteenth Amendment. Regal Oil Co. v. State (1939), 123 N.J.L. 456, 10 A.2d 495. See also Jones v. Bontempo (1940), 65 Oh. App. 103, 29 N.E.2d 428, affirmed (1941), 137 Oh. S. 634, 32 N.E.2d 17. We cannot assume that the Legislature intended to permit the sale of eyeglasses as merchandise but to deprive the dealer of one of the reasonable and lawful means of procuring purchasers for such merchandise."