Philip BIRD, Appellant–Petitioner,

v.

COUNTY OF ALLEN, Allen County,
Indiana, Appellee–Respondent.

No. 35A02–9305–CV–211.

Court of Appeals of Indiana,
Second District.

Aug. 25, 1994.

Rehearing Denied Dec. 16, 1994.

Martin T. Fletcher, Sr., Andrea L. Hermer, Rothberg, Gallmeyer, Fruechtenicht & Logan, Fort Wayne, for appellant.

John O. Feighner, Cynthia Rockwell, Haller & Colvin, Fort Wayne, for appellee.

FRIEDLANDER, Judge.

Philip Bird appeals from the trial court's decision affirming the action of the Allen County Sheriff's Department Merit Board. We reverse and remand for further proceedings consistent with this opinion.

Following a hearing, the Board issued extensive findings, and the following is a summary of the facts as contained in those findings.

In January of 1988, as members of the Allen County SWAT team, Officer Philip Bird and Officer Glen Harpel, along with four other SWAT team officers, raided a suspected drug house in Fort Wayne. Officers Harpel and Bird entered the house first and headed for the living room where they expected to find the alleged drug dealer, Church. According to previous intelligence reports, Church was considered a dangerous man who possibly possessed automatic weapons.

Unknowingly, after Officers Bird and Harpel had entered the house, they positioned themselves so that their backs were to Church. By design, Officers Farrell and Royse were to act as back-up for Harpel and Bird. When Farrell followed Harpel and Bird into the house, he saw Church pointing a gun at the two. Believing that Church was about to shoot his fellow officers, Farrell shot Church with a burst of rounds from his weapon. Royse, who was standing just behind Farrell, also saw Church with his arm extended and holding a weapon pointed at Harpel and Bird. Believing that Church was an immediate and dangerous threat to his fellow officers, Royse shot Church with three rounds from his weapon. Because Church was still in an upright position, Farrell shot him again. Two SWAT team members sub-

sequently secured and handcuffed Church. During the process, the two officers saw a pistol on the floor next to Church.

Following the shootings, Church was taken to a nearby medical center where he was pronounced dead. Members of the SWAT team were taken to the Allen County Police Department. Officers Farrell and Royse were separated and interviewed independently by an Internal Affairs Officer and detectives from the Allen County Police Department, as well as detectives from the Fort Wayne Police Department. All of the other officers involved were also interviewed by the Fort Wayne and Allen County Police Departments. Comprehensive reports on "the Lewis St. shooting" were prepared by both departments.

In February of 1988, the Allen County prosecutor deposed members of the Allen County SWAT team and representatives of both the Fort Wayne and the Indiana State Police. During Harpel's deposition, the prosecutor asked Harpel whether the shooting of Church had been necessary and justifiable. Harpel responded that it had been. During Bird's deposition, the prosecutor asked Bird the same question. Bird responded that, had no one shot Church, Church probably would have shot, or attempted to shoot, either Harpel or himself. During their depositions, both Harpel and Bird stated that they were not withholding any information concerning the Lewis St. shooting. After the prosecutor finished taking various depositions, the investigation of the Lewis St. shooting was closed and it was concluded that there was no evidence of any wrongful conduct on the part of the officers.

Two years later, in 1990, Harpel decided to run for Sheriff of Allen County. Bird, still an Allen County police officer, decided to assist Harpel with his campaign. On October 23, 1990, Harpel, with Bird's knowledge and assistance, prepared and read to the press, during a luncheon at a local restaurant, a public statement concerning the Lewis St. shooting, which stated in relevant part:

> "[A] man was shot and killed during a crack house raid on Lewis Street in January of 1988 by a SWAT Team member under the direct command of Joe Squadri-

to. Significant questions have been raised about the necessity of that shooting and the FBI is investigating not only the shooting but the handling of the subsequent investigation by the Department.... [P]olice brutality and coverups. This is the legacy that Joe Squadrito has brought ... to the Allen County Police Department and that he proposes to continue to bring as the Sheriff of Allen County." *Record* at 305.

One week later, on October 30, 1990, Harpel and Bird met with members of the news media to provide the media with information to back up their allegations both of a "bad shooting" on Lewis St. in 1988 and of an ensuing coverup by the Allen County Police Department. On that date, again with the assistance and knowledge of Bird, Harpel issued an eleven-page written statement entitled "Statement of Glen Harpel, Candidate for Allen County Sheriff, With respect to the Lewis Street Shooting." *Supplemental Record* at 1444. In that statement, Harpel alleged that the Lewis St. shooting had been "an unnecessary execution of a private citizen" and that one or more members of the Allen County Police Department had participated in a two-year cover-up of alleged police misconduct surrounding the shooting. *Id.*

In December of 1990, the Sheriff of Allen County, (Daniel Figel), filed notice of administrative charges against Bird and Harpel before the Allen County Sheriff's Merit Board. In response to the officers' motion to make the charges more specific, the newly elected Sheriff of Allen County (Joseph Squadrito) issued amended administrative charges of misconduct in January of 1991. Specifically, the charges against Bird alleged that Bird's actions, individually and in consort with Harpel, regarding the Lewis St. shooting constituted serious misconduct. In addition, the charges alleged that Bird had violated one or more of the following Rules of Conduct of the Allen County Police Department (the Rules): 1.02 Unbecoming Conduct; 1.03 Immoral Conduct; 1.25 Incompetence; 1.30 Dissemination of Information; 1.33 Abuse of Process; and 1.34 Department Reports.

In the latter part of November and the early part of December, 1991, the Merit Board conducted an evidentiary hearing on Bird's and Harpel's alleged violations. Following the hearing, the Merit Board verbally announced its decision, which was that Bird and Harpel had both violated the Rules. The Board then ordered the two terminated from employment with the police department.

On February 11, 1992, Bird and Harpel petitioned for judicial review of the Merit Board's decision.[1] The cause was venued to Huntington Circuit Court, where both parties stipulated to remand the cause to the Board for more specific written findings of fact, in compliance with IC 36–8–10–11.

On March 29, 1992, the Board submitted revised findings, conclusions of law and its decision, which reads in relevant part:

"12. On February 1, 1988, at 12:05 p.m. at the Office of the Prosecuting Attorney, Prosecutor Sims took the deposition statement of Officer Phillip [sic] Bird. After Officer Bird described his activities during the drug house raid on Lewis Street, the Prosecutor then asked him these questions and Officer Bird gave these answers under oath:

'Q. Officer, as a result of being at the scene and observing the things that you did, were you able to come to an opinion as to whether or not the shooting was necessary and justifiable or not necessary nor justifiable?

A. It is my estimation and what I know is that if somebody hadn't of shot him, there is a good possibility he would have shot either Captain Harpel or myself or at least attempted to do so.

Q. From talking to your fellow officers, were you aware that the decedent's pistol was in fact, pointed at you or your fellow team member?

A. Yes, I have learned that, yes.

Q. *Officer, is there any information that you or any other team members are withholding that you believe would be embarrassing to any policy agency?*

A. *No.'*

\*      \*      \*      \*      \*      \*

21. The statement of Glen Harpel read to the Democratic Luncheon on October 23, 1990, with the knowledge and assistance of Phil Bird, constituted wrongful conduct by Bird and Harpel in violation of Article 1.02—Conduct Unbecoming an Employee. The actions of Bird and Harpel did bring the Department into disrepute and did reflect discredit upon officers of the Department and did impair the operation and efficiency of the Department.

22. On October 30, 1990, Officer Glen Harpel and Officer Phillip [sic] Bird met with reporters at the IBEW Union Hall for the purpose of issuing information to the press to back up the charges of a bad shooting on Lewis Street and a coverup by the Allen County Police Department of said alleged bad shooting. No tape recorders or cameras were to be in the room. "We don't want anyone quoting us and recording us when we are saying things of a highly confidential nature." See *Journal–Gazette* article, Ohio Edition, October 31, 1990, Exhibit 8. The press insisted on having an on the record briefing.

---

1. Ind.Code 36–8–10–11 provides, in relevant part:

"(f) All appeals [of a Board's decision] must be tried by the court. The appeal shall be heard de novo only upon any new issues related to the charges upon which the decision of the board was made. Within ten (10) days after the service of summons, the board shall file in court a complete written transcript of all papers, entries, and other parts of the record relating to the particular case.... The court shall review the record and decision of the board on appeal.

(g) The court shall make specific findings and state the conclusions of law upon which its decision is made. If the court finds that the decision of the board appealed from should in all things be affirmed, its judgment should so state. If the court finds that the decision of the board appealed from should not be affirmed in all things, then the court shall make a general finding, setting out sufficient facts to show the nature of the proceeding and the court's decision on it. The court shall either:

(1) Reverse the decision of the board; or

(2) Order the decision of the board to be modified.

(h) The final judgment of the court may be appealed by either party...."

23. At the Merit Board and in his deposition, Officer Phillip [sic] Bird admitted making the following statements to members of the news media.

'Q. Did you say that Carter should not have been shot repeatedly because officers saw he did not have a gun in his hand?

A. Yes.' Hearing Exhibit 27, deposition of Phil Bird, p. 57.

'Q. The next paragraph is a quotation. It says, " 'When a black guy is shot by a white officer and then you have allegations that it is a bad shooting, the lid would have blown off,' Bird said." Did you make that statement?

A. Yes." Hearing Exhibit 27, Bird deposition, pp. 59–60.

\* \* \* \* \* \*

26. The Statement of Glen Harpel issued by Glen Harpel with the knowledge and assistance of Phillip [sic] Bird on October 30, 1990, contains ... scurrilous allegations against the Department and individual members of the Department.

\* \* \* \* \* \*

28. The substantial credible evidence establishes that [one officer] did not reply to [another officer] in the radio room on the day of the [Lewis St. shooting] 'No, he did not have a gun.' The evidence does establish that when they were questioned by Allen County Prosecutor Stephen Sims, neither Officer Bird nor Officer Harpel volunteered this information to the Prosecutor for his consideration during the investigation of this shooting. Clearly, if this statement were, in fact, made, it is evidence which should have been reported to the Prosecutor. If the statement was not made, and the substantial credible evidence in this hearing establishes that it was not, then the making of this scurrilous allegation is a very serious allegation which brings the Department and the officers involved into disrepute and impairs the efficient operation of the Department.

\* \* \* \* \* \*

30. [Bird and Harpel] presented no credible evidence whatsoever to establish that [officers investigating the Lewis St. shooting] were ever told by anyone that the shooting was an alleged bad shooting and that there was a coverup. Indeed, both Bird and Harpel admit that they did not report any of these allegations and alleged conversations to [officers investigating the Lewis St. shooting] at any time prior to their release during the Harpel political campaign two and a half years after the incident.

31. There is no credible evidence to show that the Lewis Street shooting 'became a deep, dark secret that the Department obviously wanted [to] bury.'

32. The oral and written statements of Officer Glen Harpel made in October, 1990, specified hereinabove and the oral statements of Officer Phillip [sic] Bird specified hereinabove, together with his participation in the preparation and dissemination of the two Harpel statements, constitute false and malicious statements in contravention of their sworn duties as members of the Allen County Police Department. The conduct, actions and statements of Deputy Chief Glen Harpel and Officer Phillip [sic] Bird constitute serious misconduct. The officers are found to have violated the following rules of conduct of the Allen County Police Department:

Article 1.02 Unbecoming Conduct; Article 1.03(2) Immoral Conduct; Article 1.25 Incompetence; Article 1.33 Abuse of Process; and Article 1.34 Department Reports.

33. As a result of the misconduct of Deputy Chief Glen Harpel and Officer Phillip [sic] Bird, the Allen County Sheriff's Department and certain members thereof have been wrongfully and maliciously accused of conducting a coverup of the police shooting of Clay Church on Lewis Street. The Department procedures for the receipt of information concerning any alleged misconduct by members of the Department [were] not followed by Deputy Chief Glen Harpel and Officer Phillip [sic] Bird. The efficient operation of the Department has been impaired by reasons of these false statements and/or the withholding of relevant informa-

tion from law enforcement authorities. As a result of the misconduct of Deputy Chief Glen Harpel and Officer Phillip Bird, the efficiency, effectiveness and credibility of these individual officers has been seriously and irreparably jeopardized. They are each unfit to perform any duties as a member of the Allen County Sheriff's Department.

\* \* \* \* \* \*

35. The Notice of Amended Administrative Charges against Officer Phillip [sic] Bird and Deputy Chief Glen Harpel have been sustained by the evidence presented by the Sheriff in this proceeding. This is an administrative proceeding pursuant to the Indiana Merit Board statute and the Rules of the Allen County Sheriff's Merit Board. The burden of proof in this case requires the Sheriff of Allen County to establish by a preponderance of the evidence that Officer Bird and Deputy Chief Harpel violated the Articles of Conduct of the Allen County Sheriff's Department and that they are, therefore, subject to disciplinary action by the Merit Board. The Merit Board is cognizant that the Sheriff need not prove the charges against Officer Bird and Deputy Chief Harpel by a higher standard of proof required in a criminal trial, namely, proof beyond a reasonable doubt. The Allen County Sheriff's Merit Board, in considering these administrative charges and the evidence produced at the administrative hearing, is applying the appropriate standard of proof—preponderance of the evidence.

Decision

Officer Phillip [sic] Bird committed very serious violations of the Articles of Conduct of the Allen County Police Department as charged in the Amended Administrative Charges. Deputy Chief Glen Harpel committed various serious violations of the Articles of Conduct of the Allen County Police Department as charged in the Amended Administrative Charges. Due to the serious nature of the misconduct engaged in by both officers which effects [sic] both the credibility and capability of the individual officers to perform their duties

and which irreparably harms the efficient operation of the Allen County Police Department it is the decision of the Allen County Sheriff's Merit Board that Officer Phillip [sic] Bird and Deputy Chief Glen Harpel shall be discharged for just cause pursuant to the Amended Administrative Charges filed against them by the Sheriff of Allen County." *Record* at 239–256. [emphasis in original]

On August 5, 1992, Harpel filed a motion to dismiss his appeal of the Board's decision, which the court granted on August 6, 1992. On October 27, 1992, the court held a hearing on Bird's petition for review of the Merit Board's decision. On February 15, 1993, the court issued findings and a judgment affirming the Board's decision, which reads in relevant part:

"3. ... The Huntington Circuit Court has carefully considered the findings and decision of the Allen County Sheriff's Merit Board issued May 29, 1992, and has carefully reviewed the evidence in this matter as well as arguments of counsel and legal memorandums submitted by counsel for the parties.... The Court finds that the evidence in this case fully supports the findings and decision of the Allen County Sheriff's Merit Board. The disciplinary action taken by the board was not arbitrary and capricious.

\* \* \* \* \* \*

6. The trial court further finds that the Allen County Sheriff's Merit Board adhered to proper legal procedure and made findings based upon substantial evidence in accordance with appropriate constitutional and statutory provisions.

\* \* \* \* \* \*

13. Court finds that Officer Bird's challenge to the Merit Board decision based upon his reading of the Indiana Supreme Court Case, *Indiana Department of Highways vs. Dixon* (1989), [Ind., 541 N.E.2d 877], is not a sufficient legal challenge to the Merit Board decision. Bird's assertion of a first amendment right to free speech must be balanced with the Sheriff Department['s] legitimate state interest to operate an efficient law enforcement agency.

The court is cognizant that petitioner Bird was speaking on a matter of public concern about which free and open debate is vital to the decision making in the community. The court also recognizes that the Merit Board and this court must balance the interest of the employee as a citizen in commenting on matters of public concern with the Sheriff's Department interest of the public employer in running an efficient operation. Bird ignores the legitimate state interest as an employer in running an efficient operation and the need to discipline employees for violations of the articles of conduct.

14. ... This court determines that the Allen County Sheriff has met its burden as an employer in attempting to justify the discharge of Officer Bird for activities and statements detrimental to the efficient operation of the department. The employer met its burden of justifying Bird's discharge on legitimate grounds. The decision of the Allen County Sheriff's Merit Board is in conformity with the first amendment requirement set forth in *Indiana Department of Highways vs. Dixon, supra.* ...

15. The Allen County Sheriff's Merit Board properly concluded based upon substantial evidence that Bird's conduct in aiding and abeding [sic] Harpel's promulgation of false and malicious charges of a coverup and the unnecessary killing of a drug suspect were reasonably calculated to create disharmony and impair the discipline and efficient operation of the Allen County Police Department. Given the necessary balance to be drawn between Bird's individual right of free speech with the legitimate state interest of the Allen County Police Department to maintain discipline and harmony among employees and the need to curtail conduct which impedes the proper and confidant [sic] performance of law enforcement duties, the Allen County Sheriff's Merit Board properly concluded that Bird's conduct exceeded any permissible constitutional protection. The court finds that Officer Bird exceeded his constitutional privilege to make fair comment upon matters of public concern when he breached his duty to comply with the articles of conduct of the Allen County Police Department.

## DECISION AND JUDGMENT

The petition for judicial review of the Allen County Sheriff's Merit Board decision fails to establish that the Merit Board decision was arbitrary or capricious and fails to establish that the Merit Board decision was contrary to law or in violation of Bird's due process rights and first amendment rights. Accordingly, the decision of the Allen County Sheriff's Merit Board is affirmed." *Record* at 799–805.

From that judgment, Bird initiated this appeal, raising the following restated issues for our review:

I. Did Bird's conduct constitute protected conduct for which a public employee may not be subjected to disciplinary action by his employer?

II. Are Rules of Conduct 1.02 and 1.03 of the Allen County Police Department overly broad and void for vagueness?

III. Was the Board's decision that Bird had violated the rules regarding incompetence, abuse of process and department reports arbitrary and capricious?

## STANDARD OF REVIEW

Our review of administrative actions is very limited. *City of Greenwood v. Dowler* (1986), Ind.App., 492 N.E.2d 1081. We must give deference to the expertise of the administrative body, and we will not reverse discretionary decisions of administrative bodies, including police merit commissions, without a showing that the decision was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. *Id.* Our review is limited to determining whether the administrative body adhered to proper legal procedure and made a finding based upon substantial evidence in accordance with appropriate constitutional and statutory provisions. *Id.* We may not substitute our judgment for that of the administrative body, or modify a penalty imposed by that body in a disciplinary action,

absent a showing that such action was arbitrary and capricious. *Id.*

■■■ An arbitrary and capricious decision, which the challenging party bears the burden of proving, is a decision which is willful and unreasonable, made without any consideration of the facts and in total disregard of the circumstances, and lacks any basis which might lead a reasonable and honest person to the same decision. *Id.* "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1085. On review, we do not reweigh the evidence. *Id.*

## I.

We address first whether Bird's conduct constituted protected conduct for which he, as a public employee, may not be subjected to disciplinary action by his employer.

According to Bird, he neither relinquished nor accepted a watered-down version of his First Amendment rights to free speech and association when he became a public employee. The determination that Bird violated departmental rules because he had associated with Harpel and because he had engaged in protected speech, argues Bird, infringes upon his constitutionally protected interest in freedom of expression.

■■■ Bird is correct when he claims that public employees do not abandon their First Amendment rights upon entering the work place. *See Campbell v. Porter County Board of Commrs.* (1991), Ind.App., 565 N.E.2d 1164. States are prohibited from conditioning public employment on any basis that infringes upon one's constitutionally protected interest in freedom of expression. *Id.* (citing *Connick v. Myers* (1983), 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708). Because speech concerning public affairs is the very essence of self-government, such speech occupies the " 'highest rung of the hierarchy of the First Amendment values,' and is entitled to special protection." *Campbell, supra* (quoting *Connick, supra,* at 145, 103 S.Ct. at 1689). Because freedom of association is a " 'basic constitutional freedom' which is 'closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society,' " association as well as speech enjoys First Amendment protection. *Morris v. City of Kokomo* (1978), 178 Ind.App. 56, 381 N.E.2d 510, 516 (quoting *Buckley v. Valeo* (1976), 424 U.S. 1, 25, 96 S.Ct. 612, 637–38, 46 L.Ed.2d 659).

■■■ Constitutional review of government employment decisions rests on different principles than review of speech restraints which the government imposes as sovereign. *Waters v. Churchill* (1994), —— U.S. ——, 114 S.Ct. 1878, 128 L.Ed.2d 686. The government's role as an employer gives it a freer hand in regulating the speech of its employees than it has in regulating the speech of the public at large. *Id.*

"[T]he extra power the government has in this area comes from the nature of the government's mission as employer. Government agencies are charged by law with doing particular tasks. Agencies hire employees to help do those tasks as effectively and efficiently as possible. When someone who is paid a salary so that she will contribute to an agency's effective operation begins to do or say things that detract from the agency's effective operation, the government employer must have some power to restrain her." *Id.* at ——, 114 S.Ct. at 1887–1888.

■■■ In *Connick v. Myers* (1983), 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708, the Supreme Court set forth a test for determining whether speech by a government employee may, consistently with the First Amendment, serve as the basis for an employee's discharge. "To be protected, the speech must be on a matter of public concern, and the employee's interest in expressing herself on this matter must not be outweighed by any injury the speech could cause to 'the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *Waters, supra* (quoting *Connick, supra,* 461 U.S. at 142, 103 S.Ct. at 1687). "The inquiry into the protected status of speech is one of law, not fact." *Connick, supra,* at 148 n. 7, and 150 n. 10, 103 S.Ct. at 1691 n. 7, and 1692 n. 10. It is thus for the court to apply the

*Connick* test to the facts of the case before it. *Waters, supra.*

■ When the government acts as employer, its interest in achieving its goals as effectively and efficiently as possible is elevated from a relatively subordinate interest to a significant one. *Id.*

■ Turning now to the case before us, we begin by reviewing the relevant portions of IC 36–8–10–11, which state:

"(a) The sheriff may dismiss, demote, or temporarily suspend a county police officer for cause after preferring charges in writing and after a fair public hearing before the [merit] board, which is reviewable in the circuit court.... The officer may be represented by counsel. The board shall make specific findings of fact in writing to support its decision.

\* \* \* \* \* \*

(e) An appeal under subsection (a) must be taken by filing in court, within thirty (30) days after the date the decision is rendered, a verified complaint stating in a concise manner the general nature of the charges against the officer, the decision of the board, and a demand for the relief asserted by the officer....

(f) All appeals shall be tried by the court. The appeal shall be heard de novo only upon any new issues related to the charges upon which the decision of the board was made....

(g) The court shall make specific findings and state the conclusions of law upon which its decision is made."

The record before us reveals that the sheriff of Allen County reviewed Bird's actions regarding the Lewis St. shooting and concluded that, by committing those acts, Bird had violated several of the Allen County Police Department's Rules of Conduct. As a result, the sheriff brought administrative charges against Bird, requested a fair public hearing on the charges and asked the Board to impose an appropriate sanction, including termination of Bird's employment.

Following an extensive fact-finding process, the Board found that Bird had admitted to telling the press that Carter should not have been shot repeatedly because officers saw that he did not have a gun in his hand.[2] The Board also found that Bird had assisted Harpel in the preparation and dissemination of various statements by Harpel. The Board found that these statements, made directly by Bird and in conjunction with Harpel, were false and malicious. The Board found that Bird's actions discredited other officers of the department and impaired the department's operation and efficiency. The Board deemed Bird's actions "serious misconduct" which not only contravened Bird's sworn duties as a member of the sheriff's department, but also seriously and irreparably jeopardized his efficiency, effectiveness and credibility as an officer. As a result, the Board decided Bird should be discharged for just cause.

Bird appealed the Board's decision to the circuit court. The court reviewed the Board's factual findings, it applied the *Connick* test to the speech and conduct for which Bird was terminated, it balanced Bird's interests, as a citizen, in commenting upon what he had concluded were matters of public concern against the State's interest, as an employer, in running an efficient operation,

---

2. At the hearing before the Board, Bird was questioned as follows:

"Q. Well, I'm going to ask you first if this was your testimony. On the day of the deposition, June 12, 1991, Page 57, Line 16. My question was, 'Did you say that Carter should not have been shot repeatedly because officer[s] saw he did not have a gun in his hand?' and you answered yes?
A. That's correct." *Supplemental Record* at 1334.

Following this exchange, Bird argued that he had been misquoted by the press. According to Bird, he had actually stated that Carter should not have been shot repeatedly *if* officers saw he did not have a gun in his hand. The Board, however, weighed the evidence, adjudged Bird's credibility and specifically found that, at the hearing before the Board and in his deposition, Bird admitted to having stated that Carter should not have been shot repeatedly *because* officers saw he did not have a gun in his hand. *Record* at 248.

On appeal, Bird presents the same argument. We may not consider his argument, however, because to do so would require us to reweigh the evidence and this we may not do. *City of Greenwood, supra.*

and it determined that Bird's speech was not protected speech. We agree.

As a matter of law, the disruptiveness of Bird's speech was sufficient to outweigh whatever First Amendment value his speech might have had. *See Waters, supra.* Bird's definite and present interference with the operations of the Allen County Police Department threatened to undermine the authority of the department. Furthermore, Bird's actions made the police department doubt Bird's future effectiveness, efficiency and credibility as an officer. "From the very nature of a policeman's duty his conduct in the community on and off duty must be above reproach." *Pope v. Marion County Sheriff's Merit Board* (1973), 157 Ind.App. 636, 301 N.E.2d 386. Such was not the case here.

Under the *Connick* test, Bird's speech was unprotected and thus not immunized from discipline.[3]

## II.

We consider next Bird's contention that two of the rules upon which his dismissal is based, specifically Rules 1.02 and 1.03, are constitutionally infirm because they are both vague and overly broad.

Rules 1.02 and 1.03 of the Allen County Police Department Rules of Conduct read as follows:

"1.02 *UNBECOMING CONDUCT*

A. Employees shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on this Department.

1. Conduct unbecoming an employee shall include that which tends to bring the Department into disrepute; or

2. reflects discredit upon the officer as a member of the Department; or

3. that which tends to impair the operation and efficiency of the Department or employee.

1.03 *IMMORAL CONDUCT*

A. Employees shall maintain a level of moral conduct in their personal and business affairs which is in keeping with the highest standards of the law enforcement profession.

1. Employees shall not participate in any incident involving moral turpitude which tends to impair their ability to perform as employees of this law enforcement agency; or

2. causes the Department to be brought into disrepute." *Supplemental Record* at 1422.

Bird directs us to the phrases "which tends to bring the Department into disrepute" and "causes the Department to be brought into disrepute" and argues that this language renders both rules unconstitutionally vague and overbroad. Because due process prohibits enforcement of a regulation which has been drafted in such a way that a person of ordinary intelligence would have to guess as to whether his conduct is proscribed by the regulation, and because Rules 1.02 and 1.03 are so drafted, argues Bird, neither of these rules are enforceable. Bird's argument lacks merit.

■■■ A basic principle of due process is that an enactment with prohibitions that are not clearly defined is void for vagueness. *Grayned v. City of Rockford* (1972), 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222.

"Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit

---

**3.** Although Bird contends that his dismissal was predicated upon statements he did not make, mere association with Harpel and the marginal involvement he had in the preparation and dissemination of various of Harpel's statements, the findings indicate otherwise. Additionally, we note that employers often "rely on hearsay, on past similar conduct, on their personal knowledge of people's credibility, and on other facts" to support an employment decision. *Waters, supra,* —— U.S. at ——, 114 S.Ct. at 1888. And, under our aforementioned standard of review, we may not reweigh the evidence.

standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an adhoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to ' "steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked." ' " *Id.* at 108–109, 92 S.Ct. at 2298–99 [citations omitted].

■■ A clear and precise enactment may nevertheless be "overbroad" if, within its reach, it prohibits constitutionally protected conduct. *Grayned, supra.*

Our supreme court was asked to determine the constitutionality of a statute which proscribed optometrists from engaging in "unprofessional conduct" in *Cassidy v. Indiana State Board of Registration & Examination* (1963), 244 Ind. 137, 191 N.E.2d 492, The Board of Registration had suspended an optometrist's license because the optometrist had allegedly engaged in "unprofessional conduct" by violating a statute which purported to limit the practice of an optometrist exclusively to the optometrist's county of residence. In determining that the statute at issue was indeed unconstitutional, our supreme court stated,

> "In order that this conclusion by the board could be said to support the further conclusion that appellant was guilty of 'unprofessional conduct,' it would seem that the board has been required to resort to [a statute], which, in remarkable language, states that, in addition to the enumerated acts defined as 'unprofessional conduct,' 'any other acts that said board may find to be unprofessional conduct, shall be deemed by said board as unprofessional conduct.' ... Before the police power of the state is used to prohibit the conduct of an individual as 'unprofessional', it should be explicitly so defined as such conduct, *or it should fall clearly within the scope of the act.*" *Id.* 191 N.E.2d at 498 [emphasis supplied].

In *Atkinson v. City of Marion* (1980), Ind. App., 411 N.E.2d 622, this court considered an appeal from a police officer who had been dismissed from the city police department for lying to his superior officer during an internal police investigation for theft and for presenting a false sales slip in connection with an investigation. The city's Board of Public Works and Safety ultimately found that the officer had engaged in "conduct unbecoming an officer," an offense which constituted grounds for dismissal pursuant to statute and under the standards set out in Rule 5(k) of the rules and regulations of the Marion Police Department. On appeal, the police officer argued that the standard "conduct unbecoming an officer," which the Board had applied and which the trial court had upheld, was unlawful because it was unconstitutionally vague.

In analyzing the statute and rule in question, this court first looked to the reasoning of *Cassidy, supra,* gave due recognition to the fact that a standard of "unbecoming conduct" may possibly be found to be impermissibly vague, and stated,

> "[I]t is not inconsistent with those principles of statutory analysis to conclude, in cases such as the one at bar, that a defendant whose conduct is *clearly* within the contemplation of a disciplinary statute or rule should not be entitled to escape responsibility for his actions merely because the same provision may be imprecise when applied in different contexts. Indeed, we believe the *Cassidy* Court may fairly be said to have intended such a result when it stated, in the passage quoted above, that a constitutionally adequate statute must either 'explicitly' define so-called 'unprofessional conduct,' *or* that such conduct *should fall clearly within the scope of the act.*' " *Id.* (quoting *Cassidy, supra,* 191 N.E.2d at 498) [emphasis supplied by *Atkinson* ].

The *Atkinson* court then turned for guidance to *Aiello v. City of Wilmington,* 426 F.Supp. 1272 (D.Del.1976), where a fireman had been suspended "after having gained entrance to a retail establishment when it was closed and being found on the business's floor in an intoxicated condition." *Atkinson,*

*supra* at 627. Following his suspension, the fireman challenged two departmental rules of conduct for vagueness. The *Aiello* court applied the principle that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness," *Parker v. Levy* (1974), 417 U.S. 733, 756, 94 S.Ct. 2547, 2562, 41 L.Ed.2d 439, as follows:

> "While they may not be models of precision, Rules 169.16 and 169.23 [prohibiting 'conduct unbecoming a fireman and a gentleman' and conduct by firemen which would 'bring discredit to themselves or to the Department'] belong to a genre not unknown in the realm of public employment, particularly with reference to the uniformed services. Their imprecision may admit of a successful challenge on vagueness grounds, but Aiello's individual attempt to do so, based on the circumstance of the charges brought against him, cannot succeed. The conduct which precipitated his suspension falls within the narrow category of acts so egregious that, despite any protestations to the contrary, he would have had no doubt that they were proscribed. In his posture, as the perpetrator of 'hard cor[e] conduct which any reasonable person must know would be cause for discipline or dismissal from employment,' Aiello has no standing to challenge Rules 169.16 and 169.23 for vagueness." *Aiello, supra*, at 1292–1293.

Applying *Cassidy, supra, Aiello, supra,* and *Parker, supra,* the *Atkinson* court refused to allow the police officer to claim that the statute and the corresponding rule had provided him with insufficient notice of the wrongfulness of his actions because the officer's behavior, (admittedly lying to his superior officer during an internal police investigation for theft and presenting a false sales slip in connection with an investigation), was of such a nature that any reasonable person would recognize it as possible grounds for dismissal. *See also Matter of Sekerez* (1984), Ind., 458 N.E.2d 229 (disciplinary rule not overbroad or vague if rule is commonly understood by reasonable men); *Natural Resources Commission v. Sullivan* (1981), Ind. App., 428 N.E.2d 92 (even though general standard of "frequently repeated acts of incompetence" was not supplemented by explicit enumeration of prohibited acts, nevertheless sufficient if specific acts involved clearly fall within scope of standard).

■ Not all "unbecoming conduct" may form the basis of a police officer's dismissal, however. In *City of North Vernon v. Brading* (1985), Ind.App., 479 N.E.2d 619, this court considered whether the issuance of an insufficient funds check by a police officer constituted "conduct unbecoming an officer," for which the officer could be justly dismissed. According to the *Brading* court, before conduct unbecoming an officer may constitute just cause for dismissal, the conduct must bear a legal relation to either the police officer's fitness for holding the position or the officer's incapacity to discharge the accompanying duties. *Id.*

■ With this authority in mind, we now consider Bird's argument that Rules 1.02 and 1.03 are constitutionally infirm because of their alleged vagueness and overbreadth. First, because Rules 1.02 and 1.03 did not explicitly prohibit Bird's conduct, we must determine whether Bird's conduct clearly falls within the scope of the rules. Rule 1.02 proscribes "conduct unbecoming an employee ... which tends to bring the Department into disrepute...." *Record* at 1422. Rule 1.03 proscribes participation in any incident involving moral turpitude which "causes the Department to be brought into disrepute." *Id.* "Disrepute" is defined as "a condition in which there is an absence or lack of esteem or good reputation ... dishonor." Webster's Third New International Dictionary 656 (1976).

The Board's findings indicate that Bird participated in the preparation and dissemination of false, malicious statements concerning an alleged coverup by the Department of the Lewis St. shooting. The Board's findings also indicate that Bird presented one story in his deposition immediately following the shooting and a different story to the news media two years later. Bird's actions clearly fall within the scope of departmental rules which proscribe conduct or participation in any incident which tends to bring the department into disgrace.

■ A defendant whose conduct clearly falls within the contemplation of a disciplinary rule should not be entitled to escape responsibility for his actions merely because that rule may be imprecise when applied in a different context. *See Cassidy, supra; Sullivan, supra; Atkinson, supra.* The conduct which precipitated Bird's dismissal falls within the narrow category of acts which are so egregious that, despite Bird's protestations to the contrary, he could have had no doubt that the conduct was proscribed conduct. As the perpetrator of such conduct, which any reasonable person must know would be cause for discipline or dismissal from employment, Bird has no standing to challenge Rules 1.02 and 1.03 for vagueness or overbreadth. *See Aiello, supra; Sekerez, supra.*[4]

As for the requirement enunciated in *Brading* that Bird's conduct bear a legal relation to either his fitness for holding his position or his incapacity to discharge his accompanying duties, we note that the Board specifically found that Bird's conduct seriously and irreparably jeopardized his efficiency, effectiveness and credibility as an officer, rendering him unfit to perform any duties as a member of the Allen County Sheriff's Department.

■ Intertwined in Bird's argument on this issue is Bird's contention that, in order for Rules 1.02 and 1.03 to be constitutional, they must be redrafted to include interpretive guidelines that inform law enforcement officers of precisely what conduct is prohibited. We disagree.

In *Medical Licensing Board of Indiana v. Ward* (1983), Ind.App., 449 N.E.2d 1129, the Medical Licensing Board revoked a chiropractor's license because the chiropractor had engaged in "willful or wanton misconduct" by massaging the genitalia of several of his female patients. The trial court reversed the Board's order, most particularly for insufficiency of the findings, and the Board appealed.

On appeal, this court considered a variety of issues, among which was whether the "willful or wanton misconduct" language of the statute under which the chiropractor was disciplined was unconstitutionally vague. In holding that the chiropractor's void for vagueness argument must fail, the *Ward* court was persuaded by both the decision in *Atkinson* as well as the following language of an Oregon court in considering whether the term "unprofessional conduct" was vague:

"Admittedly, the term 'unprofessional conduct' does not have precise contours circumscribing its meaning. The limits between good and bad professional conduct can never be marked off by a definite line of cleavage. And the variety of forms which unprofessional conduct may take makes it infeasible to attempt to specify in a statute or regulation all of the acts which come within the meaning of the term. The fact that it is impossible to catalogue all of the types of professional misconduct is the very reason for setting up the statutory standard in broad terms and delegating to the board the function of evaluating the conduct in each case." *Board of Medical*

4. Bird directs us to the dissent in *Coates v. City of Cincinnati* (1971), 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214, and argues that, while the rules in question might not be invalid as applied to the conduct underlying the charges against him, he is nevertheless permitted to raise the vagueness and overbreadth of the rules as they might be applied to others. Bird also argues that, pursuant to *Coates*, if the rules are found to be deficient in either of these respects, they may not be applied to him until and unless a limiting construction has been placed on the rules.

We in return direct Bird to *Parker v. Levy* (1974), 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439, decided some three years after *Coates* wherein the Supreme Court stated,

"Levy had fair notice from the language of each article that the particular conduct which he engaged in was punishable. This is a case, then, of the type ... in which the statutes 'by their terms or as authoritatively construed apply without question to certain activities but whose application to other behavior is uncertain.' [citation omitted]. The result of the Court of Appeals' conclusion that Levy had standing to challenge the vagueness of these articles as they might be hypothetically applied to the conduct of others, even though he was squarely within their prohibitions, may stem from a blending of the doctrine of vagueness with the doctrine of overbreadth, but we do not believe it is supported by prior decisions of this Court.... One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker*, 417 U.S. at 756, 94 S.Ct. at 2561–62.

*Examiners v. Mintz* (1963), 233 Or. 441, 448, 378 P.2d 945, 948.

Later, in *Riggin v. Board of Trustees of Ball State University* (1986), Ind.App., 489 N.E.2d 616, 628, this court addressed "whether it is possible, or even desirable, to formulate specific standards against which a college professor's fitness or competency, or adequacy to teach his classes is measured." In holding that such was not feasible, this court stated,

"As is the case with other law, codes and regulations governing conduct, it is unreasonable to assume that the drafters of the Statement on Professional Ethics could and must specifically delineate each and every type of conduct ... constituting a violation. Nor have we been cited any case reciting that the language of the Constitution requires such precision. '[I]t is not feasible or necessary ... to spell out in detail all that conduct which will result in retaliation. The most conscientious of codes that define prohibited conduct of employees include "catchall" clauses prohibiting employee "misconduct," "immorality," or "conduct unbecoming."'" *Id.* (quoting *Korf v. Ball State University* (7th Cir.1984), 726 F.2d 1222, 1227).

Thus, while the phrases "which tends to bring the Department into disrepute" and "causes the Department to be brought into disrepute" may be indefinite phrases, the variety of forms such conduct may take makes it impossible to specify within the rules all acts which come within the meaning of those phrases. It is this very impossibility which requires the standard to be written somewhat broadly and that the Merit Board evaluate the conduct in question. Contrary to Bird's contention, it is unreasonable to assume that the Rules could and must delineate each and every type of conduct which would constitute a violation.

Because Bird perpetrated conduct which any reasonable person must know would be cause for discipline or dismissal from employment, he has no standing to challenge Rules 1.02 and 1.03 for vagueness or overbreadth.

III.

Finally, we address whether the Board's decision that Bird had violated the rules regarding incompetence, abuse of process and department reports was arbitrary and capricious.

The amended administrative charges of misconduct filed by the Sheriff of Allen County against Bird alleged that, in addition to the departmental rules regarding unbecoming and immoral conduct, Bird had also violated the rules regarding incompetence, abuse of process and department reports. The specific portions of those rules which the Sheriff alleged Bird had violated read as follows:

"1.25  *INCOMPETENCE*

A. Employees shall maintain sufficient competency to properly perform their duties and assume the responsibilities of their position.

\*      \*      \*      \*      \*      \*

4. [Incompetence may be demonstrated by] [t]he failure to take appropriate action on the occasion of a crime, disorder or other condition deserving police attention.

1.33  *ABUSE OF PROCESS*

A. Employees shall not convert to their own use, manufacture, conceal, falsify, destroy, remove, tamper with or withhold evidence or information or make false accusations of a criminal or traffic charge.

1.34.  *DEPARTMENT REPORTS*

A. Employees shall submit all necessary reports on time and in accordance with established Departmental Procedure. Reports submitted by employees shall be truthful and complete.

1. No employee shall knowingly enter or cause to be entered upon any log, record, report, transcript or official document, any inaccurate, false or improper information." *Supplemental Record* at 8–11.

As we stated earlier, an arbitrary and capricious decision is one which is willful and unreasonable, made without consideration of the facts and in total disregard of the

circumstances, and lacks any basis which might lead a reasonable and honest person to the same decision. *Dowler, supra.* After reviewing the Board's findings, we conclude that the Board's decision that Bird had violated the rule regarding abuse of process is not an arbitrary and capricious one. The Board conducted an extensive fact-finding process, after which it determined that Bird, directly and in conjunction with Harpel, had made false and malicious statements regarding both the department and the Lewis St. shooting. Based upon these findings, the Board decided Bird had violated the rule concerning abuse of process by falsifying information. A reasonable and honest person could easily have come to this same decision.[5]

 Such is not the case regarding the Board's decision that Bird had violated Rule 1.25 governing incompetence and Rule 1.34 governing departmental reports. A careful review of the Board's findings reveals that the Board's decision regarding these violations lacks any basis which might lead a reasonable and honest person to the same decision. Nothing in the Board's findings supports the conclusion that Bird demonstrated incompetence by failing to take appropriate action on a condition deserving police attention. Likewise, nothing in the Board's findings supports the conclusion that

Bird violated the rule regarding the submission of truthful and complete departmental reports. For these reasons, the Board's decision regarding Bird's violations of Rule 1.25 and Rule 1.34 is one we must reverse as being arbitrary and capricious.

 The Board found that Bird had engaged in conduct which violated five of the department's rules of conduct. Based upon these five violations, the Board recommended that Bird be discharged for just cause. Inasmuch as the Board's decision rested upon five rule violations by Bird, and inasmuch as we have determined that the Board's decision regarding two of these rule violations by Bird was arbitrary and capricious, we must remand this cause to the Board, not for a new hearing but only for reconsideration of the appropriate level of discipline for Bird in light of this opinion.

This cause is reversed and remanded for further proceedings consistent with this opinion.

SULLIVAN, J., concurs.

KIRSCH, J., concurs.

---

5. Bird argues on appeal, as he did to the trial court, that, because the Merit Board denied him procedural due process, we must reverse the Board's decision that he violated the rule regarding abuse of process. Specifically, Bird contends that he was denied his right to a fair hearing because the Sheriff's charging instrument failed to properly notify him, in regard to specificity, of the particular alleged acts of misconduct underlying the allegation that he had violated this rule. We disagree.

In the administrative process, the fundamental purpose of pleadings is to inform each party of the other's position so that both parties can properly prepare. *Brinson v. Sheriff's Merit Board of Jefferson County* (1979), 182 Ind.App. 246, 395 N.E.2d 267.

The charges filed against Bird stated, in relevant part:

"5. On or about the 31st day of October, 1990, Officer Harpel, ... with the knowledge and assistance of Officer Philip Bird, issued a 'Statement of Glen Harpel' wherein Harpel made written statements of fact and opinion which were false and contrary to the officer's

sworn duty as a member of the Allen County Police Department. Officer Harpel, with the knowledge and assistance of Officer Bird, alleged that the shooting on Lewis Street was 'an unnecessary execution of a private citizen' and Officer Harpel, with the knowledge and assistance of Officer Bird, alleged in substance that one or more members of the Allen County Sheriff's Department ... had been involved in a two-year coverup of the alleged 'police misconduct.

6. On or about October 31, 1990, Officer Philip Bird participated with Office[r] Glen Harpel in making oral public statements concerning the alleged Lewis Street shooting to various members of the news media, which statements were false and contrary to the efficient operation of the Department and were intended to bring the Department and one or more members thereof into disrepute." *Supplemental Record* at 1398.

We agree with the trial court's determination of this issue, which was that Bird was provided adequate notice of the particular alleged acts of misconduct underlying the allegation that he had violated the rule regarding abuse of process.