**Glenn Robert ATKINSON, Appellant (Plaintiff Below),**

v.

**CITY OF MARION, Indiana, Appellee (Defendant Below).**

No. 2–279A29.

Court of Appeals of Indiana, Fourth District.

Oct. 8, 1980.

William A. Hasbrook, Ruckelshaus, Bobbitt & O'Connor, Indianapolis, for appellant.

John Milford, City Atty., Warren Haas, Deputy City Atty., Marion, for appellee.

MILLER, Judge.

Glenn Robert Atkinson appeals a judgment of the Grant County Superior Court affirming his dismissal, for conduct unbecoming an officer, from the Marion Police Department by the Board of Public Works and Safety of that city. He claims the dismissal was "arbitrary, capricious and illegal" because 1) the language of the appropriate statute and rule prohibiting "conduct unbecoming an officer" is unconstitutionally vague; and 2) it was improper for the Marion city attorney to sit on the Board when his deputy represented the police chief. We affirm.

By way of background we observe that Atkinson's dismissal arose from a complaint filed by the Marion Chief of Police with that city's Board of Public Works and Safety, pursuant to which the Board held a hearing as required by IC 1971, 18–1–11–3 (Burns Code Ed.) [1] It further appears from

---

[1]. That statute, which has since been amended to incorporate changes not relevant to this appeal, provides, in part:

"Every member of the fire and police forces, including police radio operators and police signal and fire alarm operators, appointed by the mayor, the commissioners of public safety or the board of metropolitan police commissioners, shall hold office until they are removed by said board. They may be re-

the record that at such hearing the city attorney for Marion sat on the Board and acted as its presiding officer, while his deputy city attorney functioned as advocate for the police department. Atkinson, *who failed to object to such procedure*, was ultimately found to be guilty of "conduct unbecoming an officer," an offense which is grounds for dismissal pursuant to IC 18–1–11–3 and under the standards set out in Rule 5(k) of the rules and regulations of the Marion Police Department, that rule being generally based on the provisions of IC 18–1–11–3. In particular, the Board found Atkinson "guilty as charged in the complaint of conduct unbecoming an officer, in that he intentionally falsified and submitted a document concerning an internal investigation."[2] The charges before the Board alleged Atkinson both falsified such document (a receipt or sales slip) which he supplied to superior officers during an investigation of reported thefts of bricks from a construction site, and that he had lied to his superior officers in connection with the same investigation. Atkinson, who acknowledged he had so misled his superiors in order to "cover up" the presence of the bricks near his home, stated the bricks had been placed in the back of his open truck without his knowledge on two occasions.

Atkinson sought and obtained judicial review of the Board's decision by filing an appropriate complaint alleging the Board's decision was "arbitrary, capricious and illegal." The trial court, after considering the transcript of the Board hearing, heard additional evidence submitted by Atkinson, and then granted the City of Marion's motion for judgment on the evidence and entered the following judgment:

"Comes now the parties in person and by counsel and the issue of the competency of the Board including the presence of the City Attorney as a Member of the Board and the Assistant City Attorney marshalling the testimony and prosecuting the proceedings is improper, the court finds for the defendant and against the plaintiff that the actions of the Board was [sic] pursuant to statute.

Further the issue of conspiracy, capricious and excessive finding of the Board is submitted. Evidence heard and concluded. Motion by the defendant for finding at conclusion of plaintiff's evi-

moved for any cause other than politics, after written notice is served upon such member in person or by copy left at his last and usual place of residence notifying him or her of the time and place of hearing, *and after an opportunity for a hearing is given, if demanded*, and the written reasons for such removal shall be entered upon the records of such board. On the conviction in any court of a member of the said fire or police force, including police radio operators and police signal and fire alarm operators, of any criminal offense, or upon a finding and decision of the board that any such member has been or is guilty of neglect or duty, or of the violation of rules, or neglect or disobedience of orders, or of incapacity, or absence without leave, or immoral conduct, or conduct injurious to the public peace or welfare *or conduct unbecoming an officer*, or other breach of discipline, such commissioners shall have power to punish the offending party by reprimand, forfeiture, suspension without pay, dismissal, or by reducing him or her to a lower grade and pay. Upon any investigation of the conduct of any member of the fire or police force, or upon the trial of any charge preferred against any member of either such forces, such board of commissioners shall have power to compel the attendance of witnesses, and to examine them under oath, and to require the production of books, papers and other evidence, at any meeting of such board, and for that purpose may issue subpoenas and cause the same to be served and executed in any part of the county where such city is located. The provisions of IC 1971, 10–1–4–2, in respect to any witness who shall refuse to testify, or to produce books or papers in his or her possession or under his or her control, in investigation and impeachment proceedings before the common council, or any committee thereof, so far as applicable, shall govern in like case before such board of public safety or the board of metropolitan police commissioners, and the proper court may compel, by attachment, commitment or other punishment, compliance with the order." (Emphasis added.)

2. The Board minutes do not reveal a finding that Atkinson had also lied to his superior officers as alleged, although the official transcript of the Board proceedings includes an oral recitation of the Board's findings (read from a document not appearing in the record) in which it was stated Atkinson lied in addition to falsifying a sales slip.

dence submitted and granted and court finds for the defendant and against plaintiff that the plaintiff take nothing by way of the complaint herein.

Costs against the plaintiff."

## I.

■ We first consider Atkinson's argument that the standard applied by the Board and upheld by the trial court pursuant to which he was dismissed for "conduct unbecoming an officer" is unlawful because it is unconstitutionally vague. His particular contention is that such language in subsection k of Rule 5, which rule of the Marion Police Department is generally based on IC 18–1–11–3, *supra*, is unconstitutionally vague in that it fails to specify what factual matters constitute conduct unbecoming an officer, and thus gives no fair warning to potential defendants nor any adequate guidance to administrative tribunals or reviewing courts which must enforce it. In the circumstances of this case, we disagree.

Rule 5 reads as follows:

"Rule 5. The Board of Works and Safety shall have the power to remove, suspend from office, or deprive of pay for any definite period of time, any officer or member of the Police Department that the Commission, in their best judgment, shall determine for the following reason, to–wit:

(a) The violation of any of the laws of the State (Act 1935, Chapter 292, page 1395) or the ordinances of the City, or any rule of the Board of Works and Safety, or incompetency.

(b) Any act of insubordination or disrespect towards a superior officer or the commissioners.

(c) Any act of oppression or tyranny.

(d) Neglect of duty and general incompetency.

(e) Neglect or disobedience of orders.

(f) Any legal or moral offense.

(g) Immoral conduct.

(h) Conduct injurious to the public peace or welfare.

(i) Incapacity or defects, mental or physical.

(j) Neglect to pay just debts for necessaries contracted while in the service.

(k) *Any conduct unbecoming an officer.*" (Emphasis added)

In support of his argument Atkinson relies principally on the persuasive reasoning of *Bence v. Breier*, (7th Cir. 1974) 501 F.2d 1185, *cert. denied,* (1975) 419 U.S. 1121, 95 S.Ct. 804, 42 L.Ed.2d 821, in which the Seventh Circuit held a rule of the Milwaukee Police Department similar to that at issue, proscribing "conduct unbecoming a member and detrimental to the service," was unconstitutionally vague for the same reasons alleged by Atkinson. In reasoning that such rule gave no notice to policemen that they were prohibited (if indeed they properly could be) from sending a letter to the city's labor negotiator outlining a proposed bargaining demand and the reasons therefor, the Court in *Bence* stated as follows:

. . . "[I]t is necessary to examine whether the rule creates a standard of conduct which is capable of objective interpretation by those policemen who must abide by it, by those Departmental officials who must enforce it, and by any administrative or judicial tribunal which might review any disciplinary proceeding. *Bence v. Breier*, 357 F.Supp. 231 (E.D. Wis.1973). On its face, the rule proscribes only conduct which is both 'unbecoming' and 'detrimental to the service.' It is obvious, however, that any apparent limitation on the prohibited conduct through the use of these qualifying terms is illusory, for 'unbecoming' and 'detrimental to the service' have no inherent, objective content from which ascertainable standards defining the proscribed conduct could be fashioned. Like beauty, their content exists only in the eye of the beholder. The subjectivity implicit in the language of the rule permits police officials to enforce the rule with unfettered discretion, and it is precisely this potential for arbitrary enforcement which is abhorrent to the Due Process Clause. Further, where, as here, a rule contains

no ascertainable standards for enforcement, administrative and judicial review can be only a meaningless gesture. There is simply no benchmark against which the validity of the application of the rule in any particular disciplinary action can be tested. The language of the rule additionally offers no guidance to those conscientious members of the Department who seek to avoid the rule's proscription. Assuming that the Department (A) formulated the rule to apply to specific acts which it might constitutionally regulate, while (B) choosing not to regulate or to regulate in the remaining thirty prohibitions other acts which it might also constitutionally regulate, given the language of the rule, whether any particular act could be classified as (A) or (B) would be purely a matter of guesswork for policemen seeking to abide by the Department's rules. Thus, the rule at issue conforms with the classic definition of vagueness. *See* Amsterdam, The Void–For–Vagueness Doctrine, 109 U.Pa. L.Rev. 67, 76 (1960)."

*Id.* at 1190.

We agree that in circumstances such as those in *Bence*, our courts should require a close scrutiny of the allegedly offending language where it appears a disciplinary statute threatens protected first amendment activity.[3] We also note however, that numerous courts (perhaps a majority) have held statutes employing similar disciplinary standards are not necessarily unconstitutionally vague.[4] *E. g., Arnett v. Kennedy,* (1974) 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (statute providing for removal of nonprobationary federal employees "only for such cause as will promote the efficiency of the service" was upheld); *Fabio v. Civil Service Commission,* (1980) 489 Pa.

309, 414 A.2d 82 (statute prohibiting "conduct unbecoming an officer" was upheld), *citing Parker v. Levy,* (1974), 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439; *Allen v. Greensboro,* (4th Cir. 1971) 452 F.2d 489; *Aiello v. Wilmington,* (D.Del.1976) 426 F.Supp. 1272; *Lubbock v. Estrello,* (Tex. Civ.App.1979) 581 S.W.2d 288; *Appeal of Tuch,* (1978) 159 N.J.Super. 219, 387 A.2d 1199; *Tucson v. Livingston,* (1974) 22 Ariz. App. 183, 525 P.2d 949, *cert. denied,* 421 U.S. 951, 95 S.Ct. 1685, 44 L.Ed.2d 105.

While it is thus significant that *Bence,* unlike the case at bar, involved a situation in which the standard of "unbecoming" and "detrimental" conduct appeared to "abut on sensitive first amendment freedoms," *Bence v. Breier, supra* at 1190, we acknowledge that much of the essential reasoning expressed in that case has heretofore been adopted by our Supreme Court in an action involving the prohibition of "unprofessional conduct" by optometrists. *Cassidy v. Indiana State Board of Registration & Examination,* (1963) 244 Ind. 137, 191 N.E.2d 492. In that case, an optometrist had his license suspended by the registration board because he engaged in "unprofessional conduct" in violation of the relevant statute, which activity purportedly was an improper advertising arrangement with an optical company. To this our Supreme Court responded:

"In order that this conclusion by the board could be said to support the further conclusion that appellant was guilty of 'unprofessional conduct,' it would seem that the board has been required to resort to § 63‑1018a, [IND.CODE 25–24–1–16] which, in remarkable language, states that, in addition to the enumerated acts defined as 'unprofessional conduct,' 'any other acts that said board may find to be unprofessional conduct, shall be deemed

---

**3.** We note in this context that in a case involving application of a similar standard to military personnel, the United States Supreme Court has observed "more precision in drafting may be required because of the vagueness doctrine in the case of regulation of expression." *Parker v. Levy,* (1974) 417 U.S. 733, 756, 94 S.Ct. 2547, 2561, 41 L.Ed.2d 439.

**4.** In fact, in *Bence* there was an opinion which dissented from the conclusion of the other two judges that the statutory language was unconstitutionally vague, stating "a less stringent standard should be applied by reason of employees' familiarity with the duties of their employment and the impracticality of defining precisely all prohibited conduct." *Bence v. Breier, supra* at 1195 (Jameson, J., concurring in part and dissenting in part).

by said board as unprofessional conduct.' This complete abrogation of legislative authority, if relied upon by the board, would be unconstitutional.

... Before the police power of the state is used to prohibit the conduct of an individual as 'unprofessional,' it should be explicitly so defined as such conduct, or it should fall clearly within the scope of the act." (Citations omitted.)

*Id.* at 149, 191 N.E.2d at 498.

While fully cognizant of the reasoning applied in cases such as *Cassidy*, and with due recognition that a standard of "unbecoming" conduct may possibly be found to be impermissibly vague, we further believe it is not inconsistent with those principles of statutory analysis to conclude, in cases such as the one at bar, that a defendant whose conduct is *clearly* within the contemplation of a disciplinary statute or rule should not be entitled to escape responsibility for his actions merely because the same provision may be imprecise when applied in different contexts. Indeed, we believe the *Cassidy* Court may fairly be said to have intended such a result when it stated, in the passage quoted above, that a constitutionally adequate statute must either "explicitly" define so—called "unprofessional conduct," *or* that such conduct "*should fall clearly within the scope of the act.*" *Id.* (Emphasis added.)

In the instant case, we believe the acts with which Atkinson was charged–namely, lying to a superior officer during an internal police investigation for theft and presenting a false sales slip in connection with the same investigation–are so clear an example, if true, of reprehensible conduct by a police officer that Atkinson could have no doubt that engaging in such behavior could ultimately lead to his dismissal if discovered. In this context we find instructive the tenet expressed by the United States Supreme Court in *Parker v. Levy, supra*, that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness," 417 U.S. at 756, 94 S.Ct. at 2561, a principle which has elsewhere been expressed–in an action similar to the instant case–as follows:

"While they may not be models of precision, Rules 169.16 and 169.23 [prohibiting 'conduct unbecoming a fireman and a gentlemen' and conduct by firemen which would 'bring discredit to themselves or to the Department] belong to a genre not unknown in the realm of public employment, particularly with reference to the uniformed services. Their imprecision may admit of a successful challenge on vagueness grounds, but Aiello's individual attempt to do so, based on the circumstance of the charges brought against him, cannot succeed. The conduct which precipitated his suspension falls within the narrow category of acts so egregious that, despite any protestations to the contrary, he could have had no doubt that they were proscribed. In his posture, as the perpetrator of 'hard cord [sic] conduct which any reasonable person must know would be cause for discipline or dismissal from employment,' Aiello has no standing to challenge Rules 169.16 and 169.23 for vagueness." (Footnotes omitted.)

*Aiello v. City of Wilmington, supra,* 426 F.Supp. at 1292-93. *See also Hayes v. City of Wilmington,* (D.Del.1978) 451 F.Supp. 696.

We believe the conduct with which Atkinson was accused in the instant case is on its face as blameworthy as that in *Aiello*, where a fireman was arrested (despite protestations that, as a fireman, he should not be) after having gained entrance to a retail establishment when it was closed and being found on the business's floor in an intoxicated condition. Nor do we believe the obvious impropriety of Atkinson's behavior, which was admittedly designed to direct attention away from the presence of construction materials in his yard during a department investigation, is in any respect mitigated by Atkinson's argument that it is "the *rule itself* and not the formal charge which must pass constitutional muster against a vagueness challenge." Even assuming, as Atkinson contends, this Court should ignore the fact that the complaint for a disciplinary hearing served on Atkin-

son specified the particular conduct alleged to be improper,[5] we believe that under the rule expressed in *Aiello v. City of Wilmington*, Atkinson would have no standing to challenge the statute, since the behavior he admittedly engaged in was of a nature that any reasonable person would recognize as possible grounds for dismissal. Having admitted lying and falsifying a sales receipt for bricks under circumstances which by Atkinson's own testimony would suggest someone may have taken them, Atkinson may not now be heard, we believe, to claim he had insufficient notice under the statute (or that a court cannot meaningfully review his dismissal) regarding the wrongfulness of his actions. It follows that the trial court's action in affirming Atkinson's dismissal was not improper because of an alleged constitutional defect in IC 18-1-11-3 or the corresponding police department rule.

## II.

We next consider Atkinson's second (and final) theory supporting the contention that the decision of the Board ordering his dismissal was "arbitrary, capricious, and illegal."[6] In particular, he argues with respect to the Board's hearing that the conflicting roles of the city attorney (who was the presiding officer of the Board and ultimately voted for Atkinson's dismissal) and the deputy city attorney (who acted as advocate for the police department) denied Atkinson due process of law and a fair hearing. While recognizing in general the merits of such an argument, our analysis further concludes that in the instant case, Atkinson waived any right to complain of bias or impropriety of this nature, in that he failed to make an objection before the Board itself despite adequate opportunity to do so.

■ Our discussion first observes, by way of background, that it is settled law the tenure given a fireman or police officer such as Atkinson is a constitutionally protected interest requiring the opportunity for a fair hearing conducted in good faith before a full and impartial body. *City of Mishawaka v. Stewart*, (1974) 261 Ind. 670, 310 N.E.2d 65; *City of Hammond v. State ex rel. Jefferson*, 411 N.E.2d 152 (Ind.App. 1980); *City of Gary v. Gause*, (1974) 162 Ind.App. 97, 317 N.E.2d 887. Although such proceedings are not subject to all of the procedural safeguards afforded at a trial, it is evident, as our courts have held, that the procedural standards should be at the highest level workable under the circumstances, and that the fact-finding process should be free of suspicion or even the appearance of impropriety. *Id.* Thus, it is

---

5. The original complaint alleged, in specifying the particular "conduct unbecoming an officer":

"1. That during an investigation concerning reported thefts of materials from the North Park Plaza construction site in the City of Marion, Indiana, Robert Atkinson lied to superior officers.

2. That during an investigation concerning reported thefts of materials from the North Park Plaza construction site in the City of Marion, Indiana, Robert Atkinson covered a false sales slip to be prepared which was presented to his superior officers."

The police department's "Response to a Motion to make More Specific" further specified in detail the particular actions alleged in support of the complaint seeking Atkinson's dismissal.

6. Although Atkinson also appears to challenge the trial court's judgment on a theory its findings were improper, we do not believe he cogently argues there was an error requiring a reversal of that court. Ind. Rules of Procedure,

Appellate Rule 8.3(A)(7). The precise nature of his argument is unclear. Although we acknowlege it may be unusual for a court to conclude that Board action was "pursuant to statute," we cannot say such a finding necessarily suggests, as Atkinson contends, that such court did not consider constitutional authority or case law. Moreover, in response to the argument that the judgment of the court presented no findings on whether the action of the Board was arbitrary, capricious, or illegal, we note the court's judgment did include the following determination:

"Further, the issue of conspiracy, capricious and excessive finding of the Board is submitted. Evidence heard and concluded. Motion by the Defendant for finding at the conclusion of Plaintiff's evidence submitted and granted and Court finds for the Defendant and against Plaintiff and that the Plaintiff take nothing by way of the Complaint herein."

settled that a city attorney may not sit as one of two members of a board of public works and at the same time prosecute an action before the board against a fireman, *City of Mishawaka v. Stewart, supra,* and that such practice suggesting bias on its face is improper even where the city attorney does not himself prosecute the case but instead delegates that duty to his assistant city attorney, and where, moreover, the board may have had a quorum voting for dismissal of a fireman even without the city attorney's participation. *City of Hammond v. State ex rel. Jefferson, supra.*

In contrast to such cases, however, though the facts may otherwise be identical, the instant case involves a question of waiver by Atkinson similar to that in *Board of Medical Registration & Examination v. Armington,* (1961) 242 Ind. 436, 442, 178 N.E.2d 741, 744, where our Supreme Court stated as follows in evaluating a similar claim of apparent bias or impropriety:

> "We next take up the second question presented, namely, that Dr. Eikenberry, a member of the board who also filed the charges against the appellee, should not have participated in the deliberations of the board. Although the appellee was aware of the fact that Dr. Eikenberry had preferred the charges against him by reason of the notice he received from the board which stated such facts, appellee failed to make any prompt objection to the board member participating in the proceedings at the time of the hearing."

In thus rejecting the claim of impropriety raised by a physician whose license was revoked by the medical board, the Court further observed, quoting the language of. *Thompson v. Ferguson,* (1913) 180 Ind. 312, 317, 102 N.E. 965, 967, that "[i]t is the general rule that, unless objection is made at the earliest opportunity to the right of the person claimed to be disqualified to act, it will be deemed to be waived." *Id.* at 443, 178 N.E.2d at 744.

■ Returning to the instant case, it is evident Atkinson, although apparently aware the deputy city attorney was prosecuting the case against him[7] while the city attorney sat on the Board pursuant to Ind. Code 18–2–1–4.2, did not raise with the Board his objection that he was for that reason denied a fair trial. Rather, such issue was raised for the first time at a point when the Board could no longer attempt to rectify the situation, namely, when Atkinson filed his complaint for judicial review of the Board's action by the Grant Superior Court.

In response to an argument of waiver, Atkinson contends he should not be penalized for failing to make his objection to the Board since, he maintains, such objection would have been futile because "a board such as the Board of Public Works and Safety has no right to decide whether a statute is or is not invalid." Even assuming *arguendo* such statement is correct, we simply note that if Atkinson had properly objected at the hearing to the dual role of the city attorney's office, his objection would not have required the Board to rule on the validity of a statute. In such a case, the issue would simply have been whether or not the city attorney should disqualify himself from Board participation (an issue we assume may present itself in a variety of contexts in addition to the one at bar) or whether the police chief in seeking his dismissal should have proceeded without representation or, in the alternative, with independent counsel in the place of the deputy city attorney. Moreover, whichever of these solutions might have been adopted if Atkinson had properly made his objection to the Board, it is evident, in any event, that no statute need be declared "invalid" simply because a particular practice creating the appearance of impropriety is found to be improper. *See City of Mishawaka v. Stewart, supra.* The instant claim of impropriety has accordingly been waived in light of the reasoning expressed in *Board of Medical*

---

7. We note counsel for Atkinson remarked at the commencement of the hearing "I would like the record to show that Chief Drook appears by the Deputy City Attorney in this case, "and Atkinson has not argued he was unaware during the hearing of the dual role served by the office of the city attorney.

*Registration & Examination v. Armington, supra.* It follows that because no other errors in the proceedings before the Board or at the trial court level have been raised in this appeal, the decision of the Board ordering Atkinson's dismissal must be affirmed.

YOUNG, P. J., and CHIPMAN, J., concur.