Dennis FORNELLI, Appellant–
Petitioner,

v.

CITY OF KNOX, Indiana,
Appellee–Respondent.

No. 75A05–0804–CV–200.

Court of Appeals of Indiana.

March 17, 2009.

Stanley F. Wruble III, South Bend, IN, Attorney for Appellant.

John E. Hughes, Kevin G. Kerr, Hoeppner Wagner & Evans LLP, Valparaiso, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Police Officer Dennis Fornelli ("Fornelli") was terminated for cause by the Board

of Public Works and Safety for the City of Knox, Indiana ("the Board"). Fornelli sought judicial review of his termination in Starke Circuit Court. The Board filed a motion for summary judgment, which the trial court granted. Fornelli appeals and raises the following arguments, which we restate as:

I. Whether the Board's decision to terminate Fornelli's employment was arbitrary, capricious, and not supported by substantial evidence; and,

II. Whether Fornelli's due process rights were violated during the administrative hearing process.

Concluding that the trial court properly granted summary judgment to the Board, we affirm.

## Facts and Procedural History

In 2006, Fornelli was employed as a probationary police officer by the City of Knox. In September 2006, the Board held a disciplinary hearing after it learned that Fornelli was engaged in an extramarital affair.[1] Because R.C., Fornelli's girlfriend, did not cooperate with that investigation, the Board concluded, based on Fornelli's testimony, that his extramarital activities occurred only during his off-duty hours. Fornelli received a five-day suspension, but was allowed to remain a probationary police officer.

Approximately six weeks later, Fornelli befriended S.P., a seventeen-year-old female who was employed at the McDonald's restaurant Fornelli frequented. This relationship involved over 2500 minutes of cell phone communication in November 2006 between Fornelli and S.P. Much of that communication occurred when Fornelli was on duty.

When S.P.'s father became aware of the relationship, he obtained her cell phone and discovered text messages from Fornelli. Examples of the messages included, "I miss you, Can't wait to see you. I love you," and "by the way, I love you the mostest of mostful." Appellant's App. p. 21. Most of the communication between Fornelli and S.P. occurred between the hours of 12:00 a.m. and 3:00 a.m.

S.P.'s father filed a written complaint with the Knox Police Department in November 2006. The chief of police determined that investigation was warranted and questioned Fornelli. Fornelli admitted that he had been seeing S.P. for three months, and that he "didn't care, she was going to be 18 and when she was 18, they were going to be together." *Id.*

On January 4, 2007, the Board held a hearing on the allegations against Fornelli. During the hearing, the Board heard more evidence regarding Fornelli's extramarital affair and the resulting altercation at his residence for which he had already been sanctioned. R.C. testified that Fornelli often visited her at her apartment while he was on duty. The manager of the apartment building also testified that she often saw Fornelli, who was usually in his police uniform, near R.C.'s apartment talking to her and kissing her.

At the same hearing, the Board also heard evidence with regard to the relationship between Fornelli and seventeen-year-old S.P. Fornelli claimed that S.P. was sharing her cell phone with a McDonalds' co-worker whose husband was being hired to do work on Fornelli's home, and some of the calls and the text messages were between Fornelli and the co-worker or her husband. Fornelli admitted that he often spoke on the phone to S.P. about her

---

1. Officers were called to Fornelli's residence when Fornelli's girlfriend, R.C., confronted his wife about their relationship. Fornelli's wife stated that during that altercation, Fornelli threatened to put a bullet in R.C.'s head. Appellant's App. p. 7.

problems, but claimed their relationship was platonic. However, more than one text message from Fornelli to S.P. stated "I love you." *Id.* at 9. Most of the cell phone calls occurred in the early morning hours while Fornelli was on duty. Many of the calls were for lengthy periods of time. For example, on November 8, 2006, a 119–minute call was initiated at 11:36 p.m. while Fornelli was on duty. *Id.* at 11. After reviewing the evidence presented, the Board did not credit Fornelli's explanation of the cell phone calls and text messages and concluded that there was "no reasonable explanation for the above calls other than the attempt at or maintenance of an inappropriate relationship by Officer Fornelli with S.P., a minor." Appellant's App. p. 14.

After determining that Fornelli engaged in conduct unbecoming a police officer "by his contact with R.C. while on duty during June, July, and August 2006[ ]" and "by his contact with S.P.," his employment as a police officer was terminated. On February 14, 2007, Fornelli filed his petition for judicial review. The Board moved for summary judgment, and a hearing was held on that motion on December 3, 2007. The trial court granted the Board's summary judgment motion after concluding that Fornelli was not denied due process of law during the administrative proceedings before the Board and that the Board's decision was "neither arbitrary or capricious and [was] supported by substantial evidence of probative value." Appellant's App. p 24. Fornelli appeals. Additional facts will be provided as necessary.

### Standard of Review

■■■ Summary judgment is appropriate only if the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Bowman ex rel. Bowman v. McNary,* 853

N.E.2d 984, 988 (Ind.Ct.App.2006). We must construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court, and we must carefully review the decision on such motions to ensure that parties are not improperly denied their day in court. *Id.*

### I. The Board's Decision

■■■ Fornelli argues that the Board's decision was arbitrary and capricious and not supported by substantial evidence.

> Our review of an administrative decision is limited to whether the agency based its decision on substantial evidence, whether the agency's decision was arbitrary and capricious, and whether it was contrary to any constitutional, statutory, or legal principle. We are not allowed to conduct a trial de novo, but rather, we defer to an agency's fact-finding, so long as its findings are supported by substantial evidence.

*Citizens Action Coal. of Ind., Inc. v. NIPSCO,* 804 N.E.2d 289, 294 (Ind.Ct.App. 2004) (citation omitted). "Neither the trial court nor this court may reweigh the evidence or reassess witness credibility." *Andrianova v. Family & Soc. Servs. Admin.,* 799 N.E.2d 5, 7 (Ind.Ct.App.2003).

> The challenging party has the burden of proving that an administrative action was arbitrary and capricious. An arbitrary and capricious decision is one which is patently unreasonable. It is made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion.

*City of Indpls. v. Woods,* 703 N.E.2d 1087, 1091 (Ind.Ct.App.1998), *trans. denied* (citation omitted).

■ Moreover, "the discipline of police officers is within the province of the government's executive, rather than judicial, branch." *Sullivan v. City of Evansville.,* 728 N.E.2d 182, 187 (citing *McDaniel v. City of Evansville,* 604 N.E.2d 1223, 1225 (Ind.Ct.App.1992), *trans. denied* )). "For this reason, we will not substitute our judgment for that of the administrative body when no compelling circumstances are present." *Id.*

■ Fornelli makes the following arguments in support of his claim that the Board's decision was arbitrary and capricious and not supported by substantial evidence: 1) that he did not neglect his duty as a matter of law because he was responsible for nearly forty percent of the arrests for the Knox police department; 2) his conversations with S.P. "about her problems" is not neglect of duty, immoral conduct, or conduct unbecoming an officer; 3) the Board disregarded uncontroverted testimony that S.P. and Fornelli did not have a romantic relationship; 4) talking on a cell phone is not neglect of duty; 5) Fornelli properly pulled S.P. over for moving violations; 6) the Board disregarded testimony that R.C. lied about Fornelli; 7) testimony from R.C.'s neighbor concerning whether Fornelli was on duty when he visited R.C. does not establish that Fornelli neglected his duty, 8) no Knox police officer testified that Fornelli neglected his duty, and 9) Fornelli did not engage in activity unbecoming an officer.

Contrary to Fornelli's assertions, the Board's findings concerning Fornelli's activities with R.C. while he was on duty and his relationship with seventeen-year-old S.P. were supported by substantial evidence. Both R.C. and her neighbor testified that Fornelli and R.C. would talk, embrace, and kiss at her apartment building while he was on duty. Moreover, evidence presented established that during the Board's original investigation of Fornelli's activities with R.C, Fornelli falsely stated that he never met with her while on duty.

With regard to S.P., a reasonable inference can be made that Fornelli and S.P. were engaged in a romantic relationship from the evidence of over 2500 minutes of cell phone communication during one month and text messages which stated, "I love you," "I miss you," and "can't wait to see you." Moreover, Knox Police Chief Harold Smith testified that when Fornelli was asked about his relationship with S.P., Fornelli replied that "he had been seeing her for the last three months, and didn't care, she was going to be 18, and when she was 18, they were going to be together." Appellee's App. p. 392. For all of these reasons, we conclude that substantial evidence supports the Board's findings, and its decision to terminate Fornelli for conduct unbecoming a police officer was not arbitrary and capricious. Fornelli's arguments to the contrary are merely a request to reweigh the evidence and the credibility of the witnesses, which our court will not do.

## II. Due Process

■ Fornelli also claims that he was denied due process for several perceived inadequacies during the administrative proceedings that resulted in his termination. "The tenure given a police officer 'is a constitutionally protected interest requiring the opportunity for a fair hearing conducted in good faith before a full and impartial body.'" *Sullivan,* 728 N.E.2d at 187 (quoting *Atkinson v. City of Marion,* 411 N.E.2d 622, 628 (Ind.Ct.App.1980) and citing *Dell v. City of Tipton,* 618 N.E.2d 1338, 1342 (Ind.Ct.App.1993), *trans. denied* (referring to Ind.Code section 36–8–3–4, which outlines police disciplinary hearing and appeal procedures)). "Although such proceedings are not subject to all of the

procedural safeguards afforded at a trial, it is evident, as our courts have held, that the procedural standards should be at the highest level workable under the circumstances, and that the fact-finding process should be free of suspicion or even the appearance of impropriety." *Atkinson*, 411 N.E.2d at 628.

Indiana Code section 36–8–3–4(c) (2006) provides that before a police officer may be dismissed, "the safety board shall offer the member an opportunity for a hearing. If a member desires a hearing, the member must request the hearing not more than five (5) days after the notice of the suspension, demotion, or dismissal. Written notice shall be given either by service upon the member in person or by a copy left at the member's last and usual place of residence at least fourteen (14) days before the date set for the hearing." The notice of the hearing must state:

(1) the time and place of the hearing;

(2) the charges against the member;

(3) the specific conduct that comprises the charges;

(4) that the member is entitled to be represented by counsel;

(5) that the member is entitled to call and cross-examine witnesses;

(6) that the member is entitled to require the production of evidence; and

(7) that the member is entitled to have subpoenas issued, served, and executed in the county where the unit is located.

*Id.* We also observe that "[p]olice merit board hearings 'are administrative actions which allow for less formality than in civil proceedings before a court and we will not disturb the [merit board's] decision for the

lack of promulgated rules of evidence as long as the hearing was full and fair, before an impartial body and conducted in good faith.'" *Sullivan*, 728 N.E.2d at 193–94 (citation omitted).

Fornelli argues that his termination hearing before the Board "failed to meet even minimal standards of due process" because 1) the Board "retried" Fornelli concerning the investigation into his relationship with R.C.; 2) the mayor of Knox, who is the President of the Board, refused to testify and refused to recuse himself; 3) the mayor testified by making narrative statements and would not permit himself to be cross-examined; 4) the Board failed to subpoena one of Fornelli's fellow officers; 5) the Knox city attorney should not have acted as a hearing officer because he had represented the Fornelli family in various legal matters; and 6) the Board illegally required Fornelli to attend marriage counseling.[2]

We first address Fornelli's claim with regard to the Board's renewed consideration of Fornelli's relationship with R.C. R.C. refused to make a statement or testify at the September 2006 hearing, which resulted in Fornelli's five-day suspension. During the investigation of Fornelli's relationship with S.P., it was discovered that Fornelli possibly made a false statement to the Board during the September 2006 hearing, when he claimed that his activities with R.C. were limited to his off duty time. We cannot conclude that the Board's inquiry as to whether Fornelli made a false statement to the Board at the September 2006 hearing violated his due process rights. Moreover, Fornelli cannot establish any prejudice because while For-

---

**2.** With regard to this last argument, we note that it may have been inappropriate for the Board to order Fornelli to attend marriage counseling at the first disciplinary hearing, which resulted in a five-day suspension.

However, whether the Board's action was inappropriate and/or unlawful has no bearing on the issues presented in this appeal. Fornelli was not terminated for failing to attend marriage counseling.

nelli's false statement was cited as a cause for his termination, from the Board's findings we can infer that Fornelli's romantic relationship with seventeen-year-old S.P. was the primary reason for his termination.

■ We now turn our attention to Fornelli's claims of bias. The trial court entered the following findings in addressing Fornelli's due process arguments:

9. Petitioner Dennis Fornelli also contends that he was denied due process because of the inability of the Board to effectuate service of a subpoena on officer Chad Dulin. The affidavit of Chief of Police Smith established that at the time the subpoena was issued, Mr. Dulin was [at] the Indiana Law Enforcement Academy outside the confines of Starke County, and accordingly, beyond the jurisdiction of the Board pursuant to Indiana [C]ode § 36–8–3–4. Moreover, circumstances were such that the timing of the request for that subpoena by Mr. Fornelli effectively hindered any opportunity for that subpoena to be served on Mr. Dulin in Starke County. Additionally, Mr. Fornelli made no offer of proof regarding Mr. Dulin's would-be testimony nor did he avail himself of the opportunity to otherwise develop that evidence for which testimony was sought.
10. Petitioner Dennis Fornelli also maintains he was denied a fair hearing because Mayor Dennis Estok served as a member of the three-person Board and, yet, was allegedly biased against him by reason of an incident involving the Mayor's son, John Estok, and his purported involvement in assisting a fugitive. Mr. Fornelli further maintains that he was denied due process because the Mayor refused to testify regarding the incident.

Mr. Fornelli's contentions fail for the reasons that, 1) the mere allegations of bias without evidentiary support is insufficient to disqualify a Board member from acting in his or her official capacity; 2) the evidence regarding the "fugitive" incident underlying the claim of bias was otherwise thoroughly presented and, to the contrary, demonstrated a lack of bias, and 3) Mr. Estok was but one member of the three person Board which, with abundant and substantial evidence to support its decision, voted unanimously to sanction Mr. Fornelli.
11. Petitioner Fornelli also maintains that Attorney Martin Bedrock improperly acted as a hearing officer at the hearing based on the claim that Attorney Bedrock had previously represented a business entity [run] by Mr. Fornelli's parents. Testimony of Becky Fornelli, Petitioner's mother, established that in the course of that representation she had provided no confidential information to Attorney Bedrock regarding her son's personal or professional life and that the representation by Attorney Bedrock had involved a wholly independent matter. At any rate, Attorney Bedrock's role was limited to resolution of evidentiary matters.

Appellant's App. pp. 22–23.

As noted by the trial court, much of Fornelli's due process claim is centered around his allegation that both Mayor Estok and Attorney Bedrock were biased against him. Fornelli provided no evidence to support these claims and the trial court's findings quoted above are supported by sufficient evidence. Fornelli has not cited any specific statement made by Mayor Estok or Attorney Bedrock at the hearing to support his bald assertions of bias. Finally, we note that the termination hearing resulted from a complaint filed by S.P.'s father. Importantly, Fornelli's claims of lack of due process with regard to his ability to present evidence

concerning the incident involving the mayor's son are not relevant to the inquiry of whether Fornelli engaged in an inappropriate relationship with seventeen-year-old S.P. Our review of the record does not reveal any evidence which would tend to support Fornelli's due process claims.

**Conclusion**

The Board's findings are supported by substantial evidence and its decision to terminate Fornelli was not arbitrary and capricious. Moreover, Fornelli did not present any evidence which would support his claim that he was denied due process during the termination hearing. Accordingly, we conclude that the trial court properly granted the Board's motion for summary judgment.

Affirmed.

BAILEY, J., and BARNES, J., concur.