**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**JOHN F. KAUTZMAN**
**JOHN A. HENRY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**ANTHONY W. OVERHOLT**
**MAGGIE L. SMITH**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY NEUMEISTER, | ) | |
| | ) | |
| Apellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 30A01-1309-PL-00387 |
| | ) | |
| CITY OF GREENFIELD, INDIANA, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE HANCOCK CIRCUIT COURT
The Honorable Daniel J. Pfleging, Special Judge
Cause No. 30C01-1201-PL-100

**July 7, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

Police Officer Anthony Neumeister ("Neumeister") was terminated for cause by the Board of Public Works and Safety for the City of Greenfield, Indiana ("the Board"). Neumeister sought judicial review of his termination in Hancock Circuit Court. The trial court affirmed the Board's termination of Neumeister's employment. Neumeister appeals and raises the following arguments, which we restate as:

I. Whether Neumeister's due process rights were violated during the administrative hearing process; and

II. Whether the Board's decision to terminate Neumeister's employment was not supported by substantial evidence.

We affirm.[1]

## Facts and Procedural History[2]

On August 7, 2011, at approximately 3:00 a.m., Anthony Neumeister, then a ten-year veteran police officer with the Greenfield Police Department ("GPD"), was off-duty and working at his second, private employment security job when he mentioned to his close friend Michael Shawn Huff ("Mr. Huff") that he was interested in selling his personal firearm, a Glock .45 caliber handgun. Mr. Huff expressed interest in purchasing

---

[1] On June 6, 2014, Neumeister filed a motion with this court seeking a stay of appeal. The motion cites an affidavit by witness Justin Jenkins recanting his statement that he observed Mr. Huff with a handgun and that Mr. Huff told him that Neumeister had sold the firearm to him. In his motion, Neumeister argues that this newly discovered evidence requires that the cause be remanded to the trial court for additional proceedings. We disagree. Neumeister's motion was denied by order of our court dated _____.

[2] In his brief, Appellant's counsel failed to provide a statement of facts most favorable to the judgment.
[2] In his brief, Appellant's counsel failed to provide a statement of facts most favorable to the judgment. We remind Appellant's counsel that pursuant to Indiana Appellate Rule 46(A)(6)(b), an appellant's statement of facts "shall be stated in accordance with the standard of review appropriate to the judgment or order being appealed."

the firearm but informed Neumeister that Mr. Huff had been convicted of two felonies in Ohio[3] and that, therefore, it would be illegal for Mr. Huff to purchase the firearm.

Shortly thereafter, Neumeister used the police computer in his cruiser to contact Hancock County Emergency Operations Center dispatcher John Collins ("Collins"). Neumeister asked Collins to perform a criminal history inquiry on Mr. Huff using the Indiana Data and Communication System ("IDACS"), a database which accesses national and statewide criminal history information and Bureau of Motor Vehicle information. Although there were no active criminal investigations regarding Huff, and although federal and state regulations restrict IDACS use to "criminal justice" purposes only, Neumeister categorized the purpose for the inquiries as for "investigation." Appellee's App. pp. 30, 35, 38, 92. The inquiry, using the name "Shawn Huff", revealed no criminal history for Mr. Huff. Several hours later, Neumeister performed a second using the name "Michael Shawn Huff," which revealed that Mr. Huff had a criminal history that included two felony convictions in Ohio.

Within "a week or two" of Neumeister's August 7 conversation with Mr. Huff and IDACS inquiries, Neumeister sold his firearm to Mr. Huff's wife ("Mrs. Huff") for $400 cash. Appellee's App. p. 808. Mrs. Huff claimed that she purchased the gun for personal safety reasons, but later testified that she had no permit for the gun and little understanding of how to operate the gun. She also testified that she stored the gun in the same safe where Mr. Huff kept the nightly deposits for his construction business.

---

[3] In Ohio, Mr. Huff was convicted of deception to obtain illegal narcotics and possession of illegal narcotics.

3

Several weeks later, on September 27, 2011, Justin Jenkins ("Jenkins"), a former employee of the construction company owned by Mr. Huff, came to the Hancock County Sherriff's Department and reported to Captain Kevin Haggard ("Captain Haggard") that Jenkins believed that Mr. Huff, a convicted felon, was in possession of a firearm. Jenkins stated that Mr. Huff had shown the firearm to Jenkins at Mr. Huff's construction office and that Mr. Huff had told Jenkins that Neumeister sold Mr. Huff the firearm. According to Jenkins, Kyle Ellison ("Ellison"), another employee of Mr. Huff, also saw Mr. Huff with the firearm at Mr. Huff's home. Captain Haggard later confirmed this with Ellison, who added that Neumeister had contacted Ellison after Jenkins went to the Sheriff's Department and questioned him regarding the information Ellison had about Mr. Huff's possession of the firearm.

Later on the same day he met with Jenkins, Captain Haggard contacted Detective Randy Ratliff ("Detective Ratliff") with the GPD to report what Jenkins had told him. Using IDACS records, Detective Ratliff confirmed that on August 7, 2011, Neumeister had used his user ID to run two inquiries on Mr. Huff. Detective Ratliff also determined that there was no pending criminal investigation involving Mr. Huff justifying the inquiries. Detective Ratliff then reported his findings to John Jester, Chief of Police for the GPD.

The same day, September 27, 2011, Captain Haggard wrote a letter to Indiana State Police First Sergeant John Carmin ("Sergeant Carmin"), Commander of IDACS, to notify him of the police department's investigation of Neumeister's potentially improper use of the system. Sergeant Carmin thereafter accessed the system in archival mode and

4

confirmed that on August 7, 2011, Neumeister's user ID was used to access the system to run two inquiries on Mr. Huff. The GPD later received a reprimand from the Indiana State Police for the violation.

The next day, September 28, 2011, Captain Haggard contacted Special Agent Emmit Carney ("Agent Carney") with the Bureau of Alcohol, Tobacco, Firearms, and Explosives regarding the investigation on Neumeister. Later that afternoon, Captain Haggard and Agent Carney met with Mr. Huff at his construction business. Mr. Huff confirmed to them that he was a convicted felon but denied that he purchased the firearm from Neumeister, insisting that it was his wife who made the purchase. Mr. Huff also acknowledged that Neumeister had performed an inquiry into Mr. Huff's criminal history. Agent Carney later told Captain Haggard that the transaction between Neumeister and Mrs. Huff possibly violated state and federal statutes, but that Agent Carney did not know whether the United States Attorney's Office would bring charges and that Agent Carney did not intend to seek charges against Neumeister.

The same afternoon, Neumeister, who was on duty at the time, requested a meeting with Detective Ratliff and Chief Jester. Neumeister first told Ratliff and Jester that he had sold his firearm to Mr. Huff, then quickly changed his statement to claim that he sold it to Mrs. Huff. Neumeister claimed that he had run only one criminal history inquiry on Mr. Huff. Neumeister claimed that his IDACS inquiry revealed no criminal history for Mr. Huff. Neumeister stated that he was not aware that use of the IDACS system was reserved for police investigations only.

The next day, September 29, 2011, Detective Ratliff learned that, on the day of his meeting with Detective Ratliff and Chief Jester, Neumeister had contacted Hancock County Emergency Operations Center coordinator Keri Brady ("Brady") and asked her whether she believed he had violated any policies by using IDACS to search for Mr. Huff's criminal history. After Brady told Neumeister that she did believe that he had violated IDACS policy, he asked her not to tell anyone about their conversation. Also, on September 29, 2011, pursuant to an agreement Mr. Huff had made during his meeting with Captain Haggard and Agent Carney to surrender the firearm, Neumeister arrived at Mr. Huff's place of business to obtain possession of the firearm.

Based on the information he gathered regarding Neumeister's use of IDACS and the transaction between Neumeister and Mrs. Huff, Detective Ratliff believed that Neumeister had violated GPD policy and procedure. On October 5, 2011, Detective Ratliff met with Neumeister for a recorded interview, during which Neumeister admitted that he had performed two inquiries into Mr. Huff's criminal history and that there was no particular crime which he was investigating when he performed the inquiries.

On October 21, 2011, Chief Jester issued his Notice of the Chief of Police's Charges, where he recommended that Neumeister be terminated from his position as a police officer. Chief Jester based his recommendations on his determination that Neumeister "performed a 'Straw purchase' gun sale to the wife of Michael Huff knowing that Michael Huff was a convicted felon and violated [] Standard Operating Procedures, as well as IDACS/NCIC rules"; that Neumeister "knowingly lied to Dispatcher John Collins to receive a criminal history on Michael Huff"; and that Neumeister violated

6

Greenfield Police Department procedures prohibiting officers from using their official position or department property for "personal or financial gain." Appellee's App. pp. 1096-97.

On October 26, 2011, the Board notified Neumeister that a hearing had been set for November 21, 2011. The notice provided that Neumeister had the right to call witness and to subpoena witnesses. Neumeister requested that the hearing be rescheduled. The Board granted Neumeister's request and rescheduled the hearing.

The three-day hearing was held on December 5, 8, and 9, 2011. Members of the Board presiding over the hearing were Brad DeReamer, mayor of the City of Greenfield ("DeReamer"), Joseph Duffy, and Ronald Nichter ("Nichter"). On December 5, the first day of the hearing, Neumeister asked the Board to continue the hearing because he wished to present testimony by Agent Carney, who was on vacation at the time. The City objected, observing that Neumeister had known about the hearing since October 27, 2011, and could have subpoenaed or arranged to depose Agent Carney, but failed to do either. The Board denied Neumeister's request for a continuance but allowed Neumeister to introduce into evidence a newspaper article in which Agent Carney told a local reporter that he believed that Neumeister "didn't break the law" because no licensed gun dealer was involved in the transaction. Appellee's App. p. 1098. At the hearing, Neumeister also requested that the Board remove DeReamer as a presiding member since DeReamer was a defendant in a prior federal claim filed by Neumeister, in which Neumeister alleged that he was wrongfully denied a job promotion. The Board denied Neumeister's request.

During the hearing, twenty witnesses testified, and Neumeister's counsel cross-examined all of the witnesses who appeared. Members of the Board also asked questions of the witnesses. The Board also admitted videotaped statements by Jenkins and Ellison over Neumeister's counsel's objection.

The parties tendered proposed findings and conclusions to the Board. On December 14, 2011, the Board issued twenty-two pages of findings of fact and conclusions terminating Neumeister's employment as a police officer. The Board concluded that Officer Neumeister used IDACS to further his personal interest, in violation of several Department policies and procedures and state law; that he lied about his purpose for accessing the system; that his conduct resulted in an investigation by the Hancock County Sheriff's Department, the Hancock County Prosecutor, the Shelby County Prosecutor acting as Special Prosecutor, the federal Bureau of Alcohol, Tobacco, and Firearms, and the Indiana State Police; that he caused embarrassment to the Greenfield Police Department and the Hancock County dispatch center; and that his behavior "reflect[ed] badly on the integrity of police professionals." Appellant's App. p. 110. The Board determined, "For Officer Neumeister's actions, as set forth in the Findings of Fact and his violation of federal law, state law, state regulations, Greenfield Police Department Standard Operating Procedure and the Greenfield Policy and Procedure Manual, his employment shall be terminated[.]" Id. at 112.

On January 13, 2012, Neumeister filed in Hancock Circuit Court his petition for judicial review of the Board's findings and conclusions, claiming due process violations and lack of substantial evidence. The trial court held a hearing on Neumeister's petition

8

the following day. The trial court allowed Neumeister to supplement the record with exhibits and testimony by Agent Carney, who stated that he did not believe that Neumeister violated federal law because, under his reading of the law, a licensed firearm dealer must be involved before such a sale is illegal.

On February 22, 2013, the parties submitted to the trial court their proposed findings of fact and conclusions. Six months later, on August 19, 2013, the trial court issued its findings of fact and conclusions thereon, determining that substantial evidence supported the Board's decision to terminate Neumeister's employment and that Neumeister's due process claims were without merit.

Neumeister now appeals.

## I. Standard of Review

This court reviews a decision of a municipal safety board as it does that of one by an administrative agency. Ind. Code § 36-8-3-4. Our review of an administrative decision is limited to whether the agency decision rests upon substantial evidence, whether the decision was arbitrary and capricious, and whether it was contrary to any constitutional, statutory, or legal principle. Fornelli v. City of Knox, 902 N.E.2d 889, 892 (Ind. Ct. App. 2009), trans. denied.

Importantly for this case, "the discipline of police officers is within the province of the government's executive, rather than judicial, branch." Sullivan v. City of Evansville, 728 N.E.2d 182, 187 (Ind. Ct. App. 2000). "For this reason, we will not substitute our judgment for that of the administrative body when no compelling circumstances are present." Id.

9

## II. Due Process

Neumeister first claims that he was denied due process, citing several perceived inadequacies during the administrative proceedings. Specifically, Neumeister argues that "actual biases exhibited" by Board members DeReamer and Nichter are "substantially prejudicial to Neumeister"; that the Board improperly denied several of Neumeister's motions; engaged in ex parte communications; and denied Neumeister the opportunity to cross-examine the City's witnesses, Jenkins and Ellison.[4] Id. at 10-11.

"The tenure given a police officer 'is a constitutionally protected interest requiring the opportunity for a fair hearing conducted in good faith before a full and impartial body.'" Sullivan v. City of Evansville, 728 N.E.2d 182, 187 (Ind. Ct. App. 2000) (quoting Atkinson v. City of Marion, 411 N.E.2d 622, 628 (Ind. Ct. App. 1980). "Although such proceedings are not subject to all of the procedural safeguards afforded at a trial, it is evident, as our courts have held, that the procedural standards should be at the highest level workable under the circumstances, and that the fact-finding process should be free of suspicion or even the appearance of impropriety." Atkinson, 411 N.E.2d at 628.

We first address Neumeister's claims that DeReamer and Nichter were unable to serve as impartial members of the Board because DeReamer was "the subject of personal and professional attack" in a lawsuit filed by Neumeister and because Nichter had

---

[4] Neumeister also argues that "the trial court's verbatim adoption of the [City's] tendered findings of fact, conclusions of law, and determination diminishes Neumeister's burden under the clear error standard of review." Appellant's Br. at 11-12. This statement is inaccurate, at best. Our review and comparison of the City's tendered findings and conclusions and the trial court's findings and conclusions indicates that the trial court did not adopt the City's tendered findings verbatim, but rather, made dozens of changes to them.

10

previously been represented in an unrelated civil action by Gregg Morelock ("Morelock"), attorney for the city of Greenfield.

Just as a judge must act with fairness and impartiality, a tribunal must act with fairness and impartiality. See Matter of Guardianship of Garrard, 624 N.E.2d 68, 70 (Ind. Ct. App. 1993); City of Mishawaka v. Stewart, 261 Ind. 670, 677, 310 N.E.2d 65, 69 (1974). We presume that "administrative agencies will act properly with or without recusal of allegedly biased members" and in the absence of "a demonstration of actual bias," we will not interfere with the administrative process. Ripley Cty. Bd. of Zoning Appeals v. Rumpke of Ind., Inc., 663 N.E.2d 198, 209 (Ind. Ct. App. 1996).

To prove bias, a party must "establish from the [Board's] conduct actual bias or prejudice that places [him] in jeopardy." Tharpe v. State, 955 N.E.2d 836, 839 (Ind. Ct. App. 2011). One may not merely allege bias and prejudice against a tribunal to escape the rigors of normal administrative procedure. New Trend Beauty Sch., Inc. v. Indiana State Bd. of Beauty Culturist Examiners, 518 N.E.2d 1101, 1105 (Ind. Ct. App. 1988). Even if bias exists, reviewing court must presume that the Board will act properly with respect to discharge or discipline of police officers with or without recusal of allegedly biased members. Adkins v. City of Tell City, 625 N.E.2d 1298 (Ind. Ct. App. 1993).

After considering Neumeister's claims of bias, the trial court concluded, in relevant part:

> 41. As to Attorney Morelock's representation of a Board member in unrelated litigation months before this case arose, there is no evidence to suggest a conflict of interest warranting reversal. As the Board noted in its findings, the only statutory limitation on the role of counsel at these hearings (other than the Rules of Professional Conduct) is that an attorney

11

prosecuting the case against an officer cannot also vote on the termination decision.  See Ind. Code § 36-8-3-4(c).  This conclusion also eliminates Petitioner's argument that Attorney Overholt, as counsel to the Board, could not participate because he represented the City of Greenfield in an unrelated lawsuit filed by Petitioner.

42. There is nothing in the Rules of Professional Conduct that prohibited Attorney Morelock's participation in the hearing since his representation of Officer Neumeister in a previous family law matter was unrelated to the issues in this case.  See Ind. R.P.C. 1.9.

* * *

48. Petitioner claims that Mayor DeReamer and Chief Jester could not participate because they were defendants in a civil suit where Petitioner claimed that the Mayor and the Chief denied his requests for promotion. This is not evidence of actual bias.

49. Further, even if this Court were to find that being a defendant in that suit was evidence sufficient to show actual bias (which it is not), the Mayor and the Chief had to play their respective parts in the hearing because State law requires it.  Under Ind. Code § 36-8-3-4(a), the board of safety/board of works must conduct the hearing.  Under Greenfield Rev. Ord. 31.12, the Mayor is, by law, a member of the Board.  See Copy of Rev. Ord. 31.12, attached hereto.  Neither State nor local law provides a recusal process for the Mayor's role on the Board.

50. Even if this Court determined that there was evidence showing Mayor DeReamer's bias, Petitioner still would not be entitled to a reversal of the Board's decision because the Mayor, by law, must serve on the Board. Indiana follows the "rule of necessity."  "[T]he rule of necessity provides that, in order that the law is not powerless to act, an otherwise disqualified judge may nevertheless preside over a case if there is no sufficient replacement."  Brown v. State, 684 N.E.2d 529, 534 (Ind. Ct. App. 1997). Indiana law, requires Mayor DeReamer to serve on the Board and requires Chief Jester, as the Chief, to file the discipline charges.

As noted by the trial court, Neumeister provided no evidence to support his bald allegations of bias, other than the fact that DeReamer is the defendant in a case brought by Neumeister, the fact that Morelock previously represented Nichter, and the fact that

12

the Board made various rulings that were unfavorable to Neumeister. This is inadequate to show actual bias. See Dell v. City of Tipton, 618 N.E.2d 1338 (Ind. Ct. App. 1993) (fact that safety board heard police officer's dismissal case once and decision was overturned by appellate court did not render board biased and unable to rehear the case, where officer presented no evidence to demonstrate that board was actually biased).

Furthermore, because Greenfield Revised Ordinance 31.12 requires that the Mayor serve on the Board of Public Works, the rule of necessity allows his presence on the Board notwithstanding any alleged bias. The rule of necessity is a doctrine firmly rooted in common law and provides that, so that the law is not powerless to act, an otherwise disqualified judge may nevertheless preside over a case if there is no sufficient replacement. See Adkins v. City of Tell City, 625 N.E.2d 1298 (Ind. Ct. App. 1993) (Where Board of Safety heard evidence and formed opinion regarding grave charges of seduction and sodomy against police officer prior to officer's dismissal hearing, this exposure called into question Board's impartiality, but rule of necessity permitted Board to hear officer's case and officer's due process rights were not violated thereby, since if Board could not rehear case after original improper hearing resulted in invalid decision to dismiss officer, city would be powerless to remove him; moreover, officer did not challenge veracity of charges against him). As the trial court noted, the General Assembly did not incorporate a recusal process for administrative proceedings because

> It would be too easy for employees facing discipline to abuse the process making tenuous arguments for recusal in order to delay or complicate the proceedings. That risk is especially high for smaller communities, such as Greenfield, which generally lack a wealth of personnel who can be called

upon to fill in for a recused member during a multiple-day Board hearing such as this one.

Appellant's App. p. 270.

Neumeister next argues that his due process rights were violated by communications during the proceedings between witnesses Chief Jester and Captain Haggard, which allegedly took place in violation of a separation of witnesses order and "within the direct line of sight of two Board members." Appellant's Br. at 21. We find no error here. Neither Chief Jester nor Haggard was a member of the Board, so no improper ex parte communication occurred. Furthermore, a violation of a separation of witness order does not constitute a due process violation. See Ashbaugh v. State, 272 Ind. 557, 562, 400 N.E.2d 767, 771 (1980) (Witnesses did not violate separation of witnesses order, but even if they had, this would not have automatically prohibited their testimony. Even if the order is violated, the court, in its discretion, may allow the violating witness to testify.).

We turn now to Neumeister's argument that the Board improperly "failed to provide Neumeister a meaningful opportunity to cross-examine Jenkins and Ellison." Appellant's Br. at 23. Although Jenkins and Ellison were present at the hearing, and over Neumeister's objection, Attorney Morelock presented the recorded statements of Jenkins and Ellison during his case-in-chief. Morelock then released Jenkins and Ellison, apparently during the lunch break on the first day of the hearing, from his subpoena and both witnesses left the hearing. As a result, Neumeister was unable to cross-examine them. Neumeister argues that this constitutes a violation of his due process rights. We

disagree. This issue arose on the first day of the hearing, December 5. After the first day, the hearing did not reconvene until Thursday, December 8. After he learned that Jenkins and Ellison had been released from the City's subpoena and left the hearing, Neumeister's counsel objected, stating that he had intended to cross-examine them. Morelock responded that Neumeister should subpoena Jenkins and Ellison if he wished to cross-examine them. The Board also offered to take a break to allow Neumeister to call back Jenkins and Ellison as witnesses, and Neumeister's counsel responded that he would attempt to locate them. He had three days to do so, but he did not. As the trial court noted, because Neumeister failed to act with reasonable diligence here, he has waived any claim of error. See Hightower v. State, 343 N.E.2d 300, 305 (Ind. Ct. App. 1976) ("Defendant had the right to confront witnesses at the hearing . . .. [But he] did not subpoena either of the court appointed physicians for that hearing and his failure so to do amounts to a waiver of his right to now argue he was deprived of his right to cross examine said physicians.").

Finally, Neumeister argues that the Board improperly denied his request for a continuance so that he could call as a witness Agent Carney, who was on vacation at the time. Again, we find no error here. After Neumeister learned on October 27, 2011 that a hearing would be held on Chief Jester's charges, he failed to issue any subpoenas to secure Agent Carney's attendance or to make arrangements to take Agent Carney's deposition. Instead, he waited until the first day of the hearing, then made a motion to continue the proceedings because Agent Carney was on vacation. The Board denied Neumeister's requested continuance, but allowed into evidence a newspaper article which

15

quoted Agent Carney's statement that he believed that Neumeister did not break the law. During the hearing, three witnesses testified that Agent Carney had told them he believed that a straw purchase in violation of federal law likely had occurred, but that he would allow Neumeister to reverse the transaction because the U.S. Attorney's Office would not file charges and prosecute this case in light of the fact that Mr. Huff's underlying felonies were not violent crimes. And on review of the Board's decision, the trial court allowed Neumeister to supplement the record with Agent Carney's live testimony, which was nearly identical to his statement in the newspaper. As the trial court noted, both the Board and the trial court were free to reject this testimony and did so. We find no reversible error here.

## II. Substantial Evidence

Neumeister argues that the Board's decision was arbitrary and capricious and not supported by substantial evidence in that: 1) the Board relied on evidence which was admitted in violation of Neumeister's due process rights; and 2) the record and the trial court's findings of fact and conclusions fail to prove that Neumeister knowingly and intentionally violated IDACS policy.

An arbitrary and capricious decision is one that is "patently unreasonable" and made without consideration of the facts and in total disregard of the circumstances and lacks any basis which might lead a reasonable person to the same conclusion. City of Indpls. v. Woods, 703 N.E.2d 1087, 1091 (Ind. Ct. App. 1998), trans. denied. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate

16

to support a conclusion." Davis v. City of Kokomo, 919 N.E.2d 1213, 1222 (Ind. Ct. App. 2010).

Indiana Code section 36-8-3-4(h) provides that "[a] decision of the safety board is considered prima facie correct, and the burden of proof is on the party appealing." Thus, an aggrieved party who is attacking the evidentiary support for the agency's findings bears the burden of demonstrating that the agency's conclusions are clearly erroneous. Davis v. City of Kokomo, 919 N.E.2d 1213, 1222 (Ind. Ct. App. 2010). We do not conduct a *de novo* trial, but defer to the fact-finding of the agency, so long as the findings are supported by substantial evidence. Id. Neither the trial court nor this court is permitted to reweigh the evidence or reassess witness credibility. Id.

We have already determined that Neumeister's due process claims are without merit. As explained below, we further conclude that the Board's findings and conclusions were supported by substantial evidence and its decision was not arbitrary and capricious.

The Board based its decision to terminate Neumeister's employment largely on Neumeister's improper use of IDACS for personal gain, a fact that is largely undisputed. Indeed, under GPD policy, state law, and federal law, his improper use of IDACS itself provides adequate basis to support his termination.

Neumeister admitted that he used the police computer in his police cruiser, while off duty, to run two inquiries on Mr. Huff. He also admitted that these inquiries were related to the sale of Neumeister's personal firearm and not to any pending criminal investigation. No fewer than six witnesses testified at the hearing that this conduct

17

violated various policies, procedures, and laws. Furthermore, Neumeister attempted to conceal his violation, asking a dispatch center employee to hide the fact that he had inquired as to the propriety of his actions and attempting to mislead Detective Ratliff and Chief Jester regarding the purpose of his IDACS inquiry and the existence of the second inquiry.

Mrs. Huff and Mr. Huff both testified that Mrs. Huff was the only person who had access to the firearm purchased from Neumeister. The Board was free to discount the credibility of their testimony for many reasons. For example, Mrs. Huff testified that the gun was stored in the same safe used to keep deposits from Mr. Huff's business, and she was not able to demonstrate even a basic knowledge about operation of the firearm. In addition Mr. Huff had previously expressed interest in buying a firearm from Deputy Haggard of the Hancock County Sheriff's Department.

The Board was also free to reject Neumeister's self-serving testimony that he believed that performing a criminal history inquiry to ensure that his own gun sale occurred legally was a valid IDACS purpose and that he believed that it was not a crime to sell a firearm to the wife of a man convicted of non-violent felonies. This is especially true where Neumeister had previously tried to conceal the fact that he used the IDACS system to run inquiries on Mr. Huff and where Neumeister initially told Detective Ratliff and Chief Jester that he sold the firearm to Mr. Huff, then quickly changed his statement to indicate that he sold the gun to Mrs. Huff. Finally, the Board was free to reject Agent Carney's statements in a local newspaper that he did not believe that Neumeister's conduct was in violation of federal law.

18

In light of the evidence presented against Neumeister and under our highly deferential standard of review, we conclude that substantial evidence supports the Board's findings, and its decision to terminate Neumeister for violating Greenfield Police Department policies and procedures, state law, and federal law was not arbitrary and capricious. Neumeister's arguments to the contrary are merely a request to reweigh the evidence and the credibility of the witnesses, which our court will not do.

## Conclusion

For all of these reasons, we conclude that Neumeister has not satisfied his burden of demonstrating that the trial court's decision affirming the Board's determination was arbitrary and capricious or unsupported by substantial evidence. Accordingly, we affirm the trial court's ruling.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.